## CHAMPION SPARK PLUG CO. v. SANDERS et al.
### No. 3767.

District Court, E. D. New York.
June 15, 1944.

See also 56 F.Supp. 787.

Owen & Owen, of Toledo, Ohio (by Wilbur Owen and Carl F. Schaffer, both of Toledo, Ohio), and Ward, Crosby & Neal, of New York City (by Joshua Ward, of New York City), for plaintiff.

John Wilson Hood, of New York City, for defendants.

BYERS, District Judge.

Hearing on plaintiff's motion for a preliminary injunction.

The complaint sets forth two claims for relief, the first for infringement of trademark, and the second for unfair competition. The plaintiff is a Delaware corporation having its principal place of business in Toledo, Ohio, and two of the individual defendants reside in this district, where all three apparently conduct business under the name and style of "The Perfect Recondition Spark Plug Company". It therefore appears that the Court has jurisdiction of the cause and of the parties.

The pleadings, and the opposing affidavits disclose a very narrow controversy because with one exception the facts are not substantially in dispute.

The question for decision is whether the plaintiff is entitled to injunctive relief against the defendants in connection with their business of repairing and marketing used and discarded Champion spark plugs of the plaintiff's manufacture used in the operation of motor vehicles.

The controversy exists because the plaintiff asserts that the defendants sell such spark plugs under the original trade-mark, without sufficiently revealing that, when so repaired and put in condition for use, they are in fact second-hand or used plugs which during the process of repair and attempted rehabilitation have undergone certain structural modifications, and hence should not be marketed as Champion spark plugs.

The defendants' calling is not the subject of challenge, nor does the plaintiff assert that the repaired spark plugs are represented by the defendants as new and unused; nor are they marketed under a trade dress which closely simulates the original package as put out by the plaintiff, except in the basic color scheme of the individual container, and of that the plaintiff does not complain. The offense which the plaintiff attributes to the defendants consists in the following:

(a) Retaining on the exposed portion of the white porcelain insulator in red letters the word "Champion", together with the letter and figure denoting the particular style or type.

(b) Stamping on the box in which ten plugs are packed, upon a white background the name "Champion", together with letters and figures indicating the particular style and type.

Each separate plug is packed by both parties in a cardboard container or box, 3½ inches long as to the plaintiff's product, and 3 inches long as to the defendants'. These in turn are placed in a larger box, containing ten units.

Except that both boxes are blue, they bear no resemblance as to the wording, and concerning the defendants' larger container it is sufficient to say that on the top appears a statement that the spark plug is guaranteed for 10,000 miles. The front and rear

elevations contain a pictorial representation of the plug, and the reading matter is: "Perfect Process Spark Plugs Guaranteed Dependable"; and on each end, the panel reads in conveniently large letters: "Perfect Process Renewed Spark Plugs"; beneath those words there is a white space in which is to be inserted (opposite the words in the left column)

| Make | "Champion" |
|------|-----------|
| Type | "14 M.M." } For example |
| Size | "H 10" |

The smaller box containing the individual plug, as sold by the defendants, repeats the wording on the top and the bottom of the larger box, and on the front panel appears the following in legible white letters on blue:

"The process used in renewing this plug has been developed through 10 years continuous experience. This Spark Plug has been tested for firing under compression before packing."

And on the rear panel the wording is:

"This Spark Plug is guaranteed to be a selected used Spark Plug, thoroughly renewed and in perfect mechanical condition and is guaranteed to give satisfactory service for 10,000 miles."

Since the plug has to be screwed into the cylinder of the motor, the lower end is threaded for that purpose; above the threaded section there is a steel body having a hexagonal collar near the top, wide enough on its faces to accept a wrench used in screwing the plug into place; and on one face of that collar there appears in the plug as sold by the defendants, in small letters, blue on black, the almost illegible word "Renewed". It appears from the affidavits that the word is not stamped into the metal but, when this section of the plug is repainted during the process of repair, the word "Renewed" is stamped so as to penetrate the paint; as to the samples in evidence that word has partly disappeared.

It appears that these parties have been before the Federal Trade Commission four or more years ago, and that the last-mentioned word "Renewed" was directed to be placed on the defendants' plug as the result of that proceeding—at least so much is asserted by the defendants and not denied by the plaintiff—but I am satisfied that, as applied, the word is inadequate to accomplish any real purpose.

No one disputes that the defendants' enterprise is entirely legitimate and that there is a market for discarded and worn-out spark plugs which have been cleaned and repainted, and in which interior spent parts are replaced, so that such an article has a useful life of some thousands of miles in ordinary use.

It also seems reasonably apparent that a purchaser of such repaired spark plugs may well wish to know what the original product was, which he is acquiring in this repaired and somewhat reconditioned state; it is also reasonable to say that the defendants' conduct of such an enterprise is not to be criticised, provided that they inform their customer adequately concerning the nature and character of the article in question; and also provided that there has been no alteration or modification of the original assembly, so that the plug in its repaired state is not something essentially different from the original product of the plaintiff; and provided further, that they avoid misleading a user into thinking that defendants are selling the original spark plug as manufactured by the plaintiff.

The plaintiff has conducted previous litigation involving this question against one Reich engaged in the same activity as these defendants, and it relies mainly upon the decision of the Circuit Court of Appeals for the Eighth Circuit in that case, Champion Spark Plug Co. v. Reich, 8 Cir., 121 F.2d 769, as an authority which this Court should follow in deciding this motion. See also Champion Spark Plug Co. v. Emener, D.C., 16 F.Supp. 816.

In the former case, the District Court had found that the defendant did not restore these spark plugs to their original condition and that they could not truthfully be referred to as "reconditioned" plugs nor as "Champion" plugs of a given type number; and that the repaired plugs had been so changed in functional features that they ceased to possess several of their original distinctive mechanical and functional features, and were no longer Champion spark plugs as the term was used by the plaintiff and known to the motoring public.

The District Court permitted the defendant to use the plaintiff's trade-mark collaterally for the purpose of identification; in commenting upon that aspect of the case, the Circuit Court of Appeals said that, under the said findings, the disposition made

by the District Court was in error; the pertinent language is.[121 F.2d 774]:

"* * * In view of the radical changes made in the spark plugs by defendant, he should not be permitted to .use the trade-mark 'Champion' upon his 'repaired' spark plugs. This use of the trade-mark is not rendered collateral and explanatory by stamping the word 'Repaired' upon the hex of the plugs. Clearly the trade-mark left ·where it was placed by the plaintiff 'indicate(s) the goods' of plaintiff, and 'a casual purchaser might look no further and might be deceived.' Prestonettes, Inc., v. Coty, supra, 264 U.S. [359], at pages 368, 369, 44 S.Ct. [350], at page 351, 68 L.Ed. 731, * * *. Under these circumstances the plaintiff is entitled to injunctive protection against its use by the defendant upon his changed plugs. Since, as the court found, defendant's spark plugs are no longer 'Champion' plugs, they should not be sold bearing the original trade-mark. Ingersoll v. Doyle, [D.C.Mass.], supra [247 F. 620]; 15 U.S.C.A. § 96."

It was stated on the argument of this motion, that the decree in the Reich case had resulted in putting that defendant out of business, and I therefore asked counsel to ascertain the true facts in that connection, and they have done so, as appears from supplemental affidavits pro and con; I am satisfied, after reading the affidavits of Reich, verified May 26, 1944, the defendant in that action, and of Wilber Owen, attorney for the plaintiff in this cause, verified May 31, 1944, that the former Reich business is being continued by McFall Engineering Co., 3031 Main Street, Kansas City, Mo., which sells spark plugs originally manufactured by the plaintiff, in boxes containing the following on the top thereof:

" 'The Best Rebuilt Spark Plugs'
"These repaired spark plugs were originally manufactured by The Champion Spark Plug Co.
"They have been thoroughly renovated and repaired. New negative electrodes installed when necessary. All metal parts refinished and bronze plated.
"A highly efficient product.
"By
"McFall Engineering Co.
"3031 Main St. Kansas City, Mo."

Further, that the figures and letters devised by the plaintiff to indicate a given type of plug are not duplicated by the Mc-Fall Co., which has prepared a chart of its own to show which plugs are suitable for use in given makes of automobiles.

The foregoing constitutes practical evidence that the injunction granted by the Court in the Eighth Circuit did not result in destroying the Reich business.

It is requisite in the present case, therefore, to seek for an adequate showing concerning the effect upon the plaintiff's spark plugs of the repair and recondition process as applied by these defendants; in this connection the affidavit of Brace H. Sibley, the plant manager of the plaintiff, is factual and detailed with reference to tests which he applied to forty used and repaired Champion plugs acquired by the plaintiff indirectly from the defendants. Pages 7–15, inclusive, contain such detailed and precise statements concerning the variations between the plaintiff's product and the device which the defendants sell, as to admonish the Court that, in the absence of a direct denial of these assertions, there is a prima facie showing of facts which brings this case squarely within the record in the Reich case.

The structural differences have to do with the spark gap settings on more than half of the forty plugs tested by Sibley; it will be understood that the precision and proper adjustment of the gap settings, and the position of the spark within the cylinder of the motor (which it is the office of the spark plug to supply) largely determine the efficacy of the device.

Experience has dictated the necessity for slight changes in a given design such as in the case of the H–10 plug of which the number of 64 A was discontinued in October of 1940 and succeeded by 64 C and later by 64 D. Details of the firing and dimensions and permitted tolerance in reference thereto are set forth in detail. It is stated that: "In only one of the forty plugs referred to (the plug marked A9) were the three critical dimensions in the firing end of the plug all within the Champion Company's manufacturing specifications * * *. In twenty-four of these plugs two of these dimensions were wrong * * *. In all but seven of the 40 defendants' plugs which I have examined, as above stated, the semi-petticoat end of the insulator had been completely destroyed by sandblasting and in those seven plugs it had been badly damaged. * * * It (petticoat) is the term

applied to the sharp lower edge of the insulator and is functional in that it causes oil which accumulates on the insulator to drip off the insulator instead of running down the center electrode and forming a drop between the sparking ends of the electrodes. * * * In addition to the changes in gap settings and other firing end dimensions in the forty plugs I examined, I found that the adjacent portions of the center and side electrodes were not properly shaped to give efficient service. * * * The changes from original dimensions which have been made in defendants' plugs detrimentally affect their efficiency and make them incapable of rendering the high quality of service which Champion spark plugs as originally manufactured and sold render in the cars for which they are recommended by the plaintiff."

In referring to the wire constituent of the electrodes in the defendants' plug, the affidavit says: "Such examination showed that this substituted wire is of a different composition from that used by plaintiff in these plugs when they were manufactured and sold as new Champion plugs, it does not embody the invention of patent No. 1,-529.277 above referred to, it is not of as high a quality as the wire originally used by plaintiff in these plugs, and in my opinion such substituted wire will not give as efficient service as did the wire originally placed in said plugs by plaintiff. Furthermore, most of the center wires in defendants' plugs have been shortened from their original dimensions and the portions that remain have been burned from long usage, most of them badly. * * * A large proportion of the forty plugs above referred to would not give satisfactory service in the engines for which plaintiff's plugs of corresponding type numbers are recommended for use by plaintiff."

The defendants do not meet the foregoing in presenting the affidavits of Hugh S. Cameron, who contents himself with saying: "The argument of this affidavit (the Sibley affidavit) is unsound for the following reason; engineering science does not permit exact theoretical precalculation as to the ideal spark plug and the final judgment upon the plug must depend upon its actual performance in the engine."

Whether the plaintiff's spark plug has been properly designed and assembled, and whether its elements cooperate as Sibley says they were designed to do, is beside the point. As assembled in accordance with the plaintiff's specifications, the completed structure constitutes the Champion spark plug and, if the defendants are engaged in selling something else, they have no right to use the word "Champion" to describe their wares.

The Cameron affidavit refers to variable conditions which affect the operation of the gasoline motor and the functioning of the spark plug, and continues: "In view of the above conditions, it is technically impossible for an engineer to show on purely theoretical grounds that the defendants' reconditioned plugs can no longer be regarded as Champion spark plugs. Any proper judgment thereon must be based upon the comparative actual performance in engines of the new Champion plugs and the reconditioned Champion plugs. Operation both in testing equipment and in actual use in engines, shows that the reconditioned plug fires as well and performs as well as a new plug. There is, therefore, no engineering basis for saying that the defendants' reconditioned plugs are no longer reconditioned Champion spark plugs."

The foregoing probably states concisely the contentions of the defendants with regard to their right to continue to use the word "Champion" in marketing their product, and in the opinion of this Court there is so disclosed a failure to understand that the question is not whether the new plugs function any better than the old ones which have been repaired, or as well; but whether the article which the plaintiff manufactures is intrinsically the same thing that the defendants are selling; if it is not, they have no right to use the plaintiff's trade-mark, and the opposing affidavit of Cameron should be construed as though it were a plea in confession and avoidance, and the avoidance aspect of it does not accomplish any legal purpose.

The averments in the Sibley affidavit of the experimentation carried on to develop the most efficient spark plug for certain Ford cars, and those of other makes, are too factual to be brushed aside with the comment that the plaintiff is mistaken in its theories of construction of the device which it has been making and selling in large volume, for many more years than the defendants have been in business.

This decision should not be controlled by the reasoning applied to second-hand automobiles, vacuum cleaners and other like

products as to which the purchaser expressly contracts for a second-hand article which has been repaired and put in usable condition, for the reason that ultimate spark plug purchasers, as distinguished from distributors and garage men, may or may not know that they are buying a repaired and reconditioned article. The affidavits upon this motion leave no doubt in the mind of the Court that, as to certain large consumers, there is no misunderstanding whatever, for they expressly engage to buy reconditioned spark plugs; but whether the casual motorist stopping at a service station for a road repair is always equally apprised, when he asks for a "cheaper spark plug" than that manufactured by the plaintiff or other equally well-known products, is left in considerable doubt. While it is true that the defendants should not be held responsible for possible misrepresentations by repairmen who handle their product, it is equally clear that there is nothing unreasonable in requiring of them that they shall take reasonable safeguards to prevent the substitution of their product for that of the plaintiff. In other words, the unfair competition issue cannot be resolved on the affidavits pro and con, but the trade-mark aspect of the case stands on a different footing.

As a practical matter, it may be difficult to require that the word "Champion" be physically removed from the white porcelain exposed portion of the insulator, although Sibley's affidavit asserts that this could be accomplished by the application of hydrofluoric acid without damage to the plug, if it is immediately washed in water. He also asserts that the word "Used" can be stamped in one side of the hex of the spark plug, and the letters filled with white paint, and that the metal parts of the plug, which would have to be treated in any case during the process of repair, could be painted a distinctive color, and that all such operations would not cost to exceed one cent per plug.

As to the first suggestion, the Cameron affidavit recites that, if the porcelain were to be subjected to the acid wash, the effect would be to remove the glaze therefrom, thus rendering the insulator porous, which would tend to defeat its ability to function, by causing the spark to jump across the insulator, and make the plug useless. No reference is made to the possibility of reglazing the treated portion of that surface.

It is obvious that a fair and equitable disposition of this controversy invites the recognition alike of conflicting interests, and of the difficulty of establishing a clear line of demarcation between them.

██ The plaintiff has a right to protect its trade-mark and to prevent unfair competition with its product.

██ The defendants are engaged in an entirely legitimate calling—perhaps because the plaintiff has deliberately chosen not to reclaim its own discarded product, although experience has shown that reclamation is possible and financially profitable. Moreover the defendants assert with a show of reason, that some measure of identity must be preserved in connection with marketing the repaired and reconditioned product of the plaintiff, if they are to reap a just reward for their efforts. Incidentally this last consideration is a completely practical answer to the argument that, once the plaintiff has sold its spark plug under its trade-mark, its concern and interest in the ultimate career of its product have come to an end. If that were true, the defendants would not wish to retain the plaintiff's indicia of origin in the conduct of their own operations; which is the same thing as saying that the plaintiff has a continuing interest at stake, which survives the passage of legal title from it to its customers. Whether that continuing interest has been accorded a legal recognition compatible with its practical existence, it is not necessary to inquire, for its presence is implicit in the defendants' case. If under these circumstances the plaintiff's interests are at stake when its discarded trade-marked article has been resuscitated as a marketable product, those interests are entitled to equitable protection.

Cf. General Electric Co. v. Re-New Lamp Co., C.C. 121 F. 164; Id., C.C., 128 F. 154.

The rights of the parties should not be in conflict, because their activities are conducted at different levels; their respective distributional efforts need never collide if reasonable care is taken to avoid such a happening.

If the defendants were to affix the prefix "Ex" with a hyphen to the word "Champion" as it appears on the insulator, a fairly accurate and precise disclosure of the nature of their product would be made. One meaning of the prefix is "from", and

another is "former", both of which would indicate that the article which the defendants sell is fabricated from the Champion spark plug, or that it was formerly that article; no representation is implied that structurally the repaired plug is identical with the new one, and it is not thought that this would constitute such an appropriation of the plaintiff's trade-mark by these defendants as to accomplish infringement thereof.

Moreover it would call the attention of a discriminating purchaser to the likelihood that the letters and figures adopted by the plaintiff in its chart, to indicate the specific type of plug required for the functioning of a given motor, would not necessarily govern the use of the repaired plug.

In addition, it is thought that the defendants should stamp the word "Used" into the metal of one face of the hex of the spark plug, and cause the letters to be filled with white paint, and that in repainting the metal part of the plug, some distinctive color other than that used by the plaintiff should be employed, such as red. Cf. Champion Spark Plug Co. v. A. R. Mosler & Co., D.C., 233 F. 112, 113.

If the suggestion concerning the use of the prefix "Ex" is found acceptable, the defendants should stamp the compound word "Ex-Champion" on the containers of their reconditioned spark plugs originally manufactured by the plaintiff, and in all advertising matter employed in connection with the sale of such product.

The foregoing avoids a direction respecting the removal of the word "Champion" entirely from the exposed portion of the porcelain insulator, because I should prefer so doing, for the purpose of a preliminary injunction, without requiring proof on the contested issue concerning the allegedly deleterious effect of exacting such a requirement, upon the functioning of the repaired and reconditioned spark plug, if hydrofluoric acid is employed in that connection.

The foregoing is intended to indicate that the Court believes that the plaintiff is entitled to a temporary injunction pending the trial of this cause, along the lines indicated, and it is hoped that the parties can agree upon the form for such disposition of the motion; failing that, the order will be settled on notice, at which time its precise provisions will be settled by the Court.

The defendants' argument that the plaintiff has been guilty of laches has not been overlooked. There is no such defense raised in the answer, nor is it deemed to be an objection worthy of consideration upon this motion, in view of the previous efforts which have been made by the plaintiff to establish its rights through a Federal Trade Commission proceeding, and the litigations against others in the defendants' line of business.

Settle terms of temporary injunction on five days' notice. Defendants' motion for summary judgment denied.