## CHAMPION SPARK PLUG CO. v. SANDERS et al.

### Civ. A. No. 3767.

District Court, E. D. New York.

July 2, 1945.

Wilber Owen, Carl F. Schaffer, and Owen & Owen, all of Toledo, Ohio (Joshua Ward and Ward, Crosby & Neal, all of New York City, of counsel), for plaintiff.

John Wilson Hood, of New York City, for defendants.

BYERS, District Judge.

This cause has undergone final hearing, and no substantial change in its essential features has been brought to light which would justify a repetition of what was said in connection with the application for preliminary injunction. 56 F.Supp. 782 and 787. The cause is not essentially different from the cases of Champion Spark Plug Co. v. Emener, D.C., 16 F.Supp. 816, and Champion Spark Plug Co. v. Reich, 8. Cir., 121 F.2d 769.

The matters which have been illuminated in the testimony may be briefly referred to:

A. As to the structural difference between the spark plugs sold by the defendants, and the new plugs manufactured and sold by the plaintiff, forty of such plugs constitute plaintiff's exhibits 1, 2, 3 and 4, and the respects in which the repaired secondhand plugs no longer possess the physical characteristics imparted to them by the plaintiff are specified in Findings 11 and 12 as submitted by the plaintiff. The evid-

ence on this subject is undisputed, and no attempt has been made to trace the source of those changes, either to wear and tear prior to the discarding of the plug by the original user, or to the process of repair as conducted by the defendants. It is the end result which has to do with the plaintiff's trade-mark rights, not the means whereby that condition was brought about.

It seems too clear for further discussion, that plaintiff's product, which is a precision device, of accessory character, cannot be sold in the secondhand market in a fundamentally altered form under the plaintiff's trade-mark, without doing violence to that which the trade-mark proclaims; it seems equally clear that any reference to the origin of the repaired plugs, in connection with their distribution by the defendants, must be in an explanatory sense merely, and in such a form as to show that the defendants have repaired a used article of designated origin and that the defendants stand sponsor for the quality of the repairs which they have made, and also the anticipated performance of the rehabilitated device.

B. As to the removal of the trade-mark "Champion", and the type or style marks on the insulator, the evidence leaves no room for doubt that this can be done safely and cheaply, and without impairment of the porcelain itself. The demonstration at the trial was conclusive on that subject.

The necessity for doing this as to the trade-mark follows from what has been written above. The reason is equally applicable to the style marks and numbers. The variations in the physical components of the plaintiff's products referred to in Findings 11 and 12, as sold by the defendants, compel the removal of the style marks and numbers from them, if misrepresentation is to be avoided.

The defendants argue that the specifications employed by the plaintiff are too minute and precise to have any practical value. If this proves anything in a trade-mark case, it is that the defendants' business can be conducted profitably without regard to plaintiff's system of style marks and numbers, and consequently they can be removed with entire confidence that no damage will be thereby occasioned to the defendants.

C. As to the unfair competition aspect of the case, a doubt still persists on the part of this Court. There is no evidence of a palming off of the defendants' wares as the new and original product of the plaintiff; there is no evidence that any purchaser was induced to buy the plugs as sold by the defendants, relying upon a representation that they were as serviceable as new ones.

It may be assumed that to some undisclosed extent purchasers who would otherwise buy new plugs of plaintiff's manufacture are induced to take the defendants' wares instead, at a lower price, but that is not unfair competition, so long as no deception is practiced by the defendants to accomplish that purpose, and so long as they do not render deception convenient or likely on the part of their customers among service station proprietors.

All cases relied upon by the plaintiff have been examined, and involve substitution or palming off, or the use of a trade-name so as to suggest an untrue origin of the merchandise in question, in order either to capture some of the plaintiff's business, or to unfairly trade upon his (its) name and commercial stature.

The most that can be urged here is that possibly these defendants have done the latter, and their failure to print their own name and place of business on their cartons and boxes lends a certain force to that argument. No good reason appears why they should not openly stand sponsor for the repairs that they have effected in order to render their wares acceptable to users.

I prefer not to make a finding that unfair competition has been shown in this record, but to leave the issue for future determination, if the occasion should arise, in view of the requirements hereafter to be stated touching the wording deemed to be appropriate for use by the defendants upon their cartons and boxes.

Special defenses have been pleaded which seem not to affect the issues, but which should be referred to by way of assurance that they have not been ignored:

Estoppel. The plaintiff puts out a spark plug cleaner and recommends that it be used by those who purchase its product. How this could have resulted in a change of position on the part of defendants, whereby they have acted or refrained from acting in reliance upon the plaintiff's said conduct, is not made to appear. What a spark plug user may do to keep his own property in its best condition,

and what a dealer in discarded plugs, who buys, repairs and sells them for further use, may do lawfully by way of promoting his business, seem to be so remote, one from the other, as to discourage discussion of the subject.

Implied License. This is related to the foregoing, and means that the sale of the plug-cleaning device in effect licenses the defendants not only to use it, but to sell plugs which they have repaired under the plaintiff's trade-mark.

If what has been already written by other courts and this fails to indicate that the plaintiff's trade-mark is not assigned as part of the plugs, or as part of the cleaning device, and consequently no license can be implied in favor of these defendants in connection with their own commercial traffic, further exposition of the subject would be futile.

Laches. As stated in the opinion on temporary injunction, the defense, if seriously advanced, is without substance. In 1936 the plaintiff gave written notice to the defendants of the then recent decision in the Emener case, supra, and has persistently continued ever since to admonish the defendants of its intention to seek legal redress. The proceedings initiated before the Federal Trade Commission in 1938 were not concluded until 1941 when the defendants withdrew their appeal from a "cease and desist" order.

The fact that the order was complied with by the defendants of course does not affect the claim of laches.

This complaint was filed in April of 1944. Meanwhile the Reich case, supra, was decided in the Eighth Circuit in 1941. So far from sleeping on its rights, clearly the plaintiff has been diligent in asserting them.

So far as the motion to dismiss as to Peter Sanders is concerned, there is evidence, but not from him, although he is said to have been in court throughout the hearing, that late in 1943 or early in 1944 he withdrew from the partnership with his sons, the remaining defendants. No formal proof of dissolution of the firm was offered, and he and his wife own the building in which the business is conducted. For all that appears, he may still be a silent partner, and it is not seen that dismissal as to him would be appropriate, but rather that the injunction to be issued should in terms include him.

It results from the foregoing and from the findings which are filed herewith, that the temporary injunction is to be supplanted by a permanent injunction which shall provide:

1. The defendants are to be forbidden to use the plaintiff's trade-mark "Champion" on the spark plugs repaired and sold by them of the plaintiff's manufacture, and also the style and type marks of figures or letters or both; such trademark and such style and type marks are to be removed entirely from said plugs.

2. The word "used" or "repaired" is to be stamped and impressed in the metal of the "hex", and the word is to appear in white paint, and the metal part of the plug is to be painted some distinctive color as may be agreed upon.

3. The plaintiff's trade-mark "Champion" and the plaintiff's type or style marks are to be removed from the cartons and containers.

The defendants may affix to the cartons and containers of the plugs which they sell which were originally manufactured by plaintiff, the following: "Used spark plug(s) originally made by Champion Spark Plug Company, repaired and made fit for use up to 10,000 miles, by Perfect Recondition Spark Plug Co., 1133 Bedford Ave., Brooklyn, N. Y."

The name of the plaintiff may be in slightly larger type than the rest of the body of the legend, and the name and address of the defendants to be larger and more prominent than the legend itself.

The word "repaired" is chosen as being more accurate than the word "reconditioned", which would be inappropriate in view of the changes in physical characteristics referred to in findings 11 and 12.

Settle decree; no costs.