PRESTONETTES, INC. *v.* COTY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 197.   Argued February 18, 19, 1924.—Decided April 7, 1924.

1. The ownership of a registered trade mark consisting of a name designating the owner's goods does not carry with it the right to prohibit a purchaser, who repacks and sells them with or without added ingredients, from using the name on his own labels to show the true relation of the trade-marked product to the article he offers, provided the name be not so printed or otherwise used as to deceive the public.   P. 368.
2. In this regard, no new right under the trade mark can be evoked from the fact that the goods are peculiarly liable to be spoilt or adulterated.   P. 369.

285 Fed. 501, reversed.

CERTIORARI to a decree of the Circuit Court of Appeals reversing a decree of the District Court in a suit to enjoin alleged unlawful uses of trade marks.

*Mr. Charles H. Tuttle* and *Mr. Louis Marshall,* with whom *Mr. Isaac Reiss* and *Mr. William J. Hughes* were on the briefs, for petitioner.

The labels ordered by the District Court were modeled upon the wording proposed in *Hennessy v. White,* 6 W. W. & A'B. Eq. 216. They stated the true name of the merchandise and of the manufacturer and the true relation of the defendant to the product,

This Court has held in trade mark cases that the essence of the wrong consists in the sale of the goods of one manufacturer for those of another. *Hanover Milling Co.* v. *Metcalf,* 240 U. S. 403; *Elgin National Watch Co.* v. *Illinois Watch Co.,* 179 U. S. 665; *United Drug Co.* v. *Rectanus Co.,* 248 U. S. 90; *Canal Co.* v. *Clark,* 13 Wall. 311.

A trade mark right is not a right in gross or at large, like a statutory copyright or a patent for invention, and its owner may not, like the proprietor of a patented invention, make a negative and merely prohibitive use of it as a monopoly. Its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his. *United Drug Co. Case, supra.*

Under the Trade Mark Act, § 16, there is no actionable offense unless one man's trade mark is unlawfully reproduced on the product of another's manufacture; and the common law of trade marks is but a part of the broader law of unfair competition. *Hanover Milling Co.* v. *Metcalf,* 240 U. S. 403; *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict,* 198 U. S. 118; *Goodyear Co.* v. *Goodyear Rubber Co.,* 128 U. S. 598; *Laurence Mfg. Co.* v. *Tennessee Mfg. Co.,* 138 U. S. 537; *Davids Co.* v. *Davids,* 233 U. S. 461.

Federal cases directly in point are *Russia Cement Co.* v. *Frauenhar,* 126 Fed. 228; 133 Fed. 518; *Apollinaris Co.* v. *Scherer,* 27 Fed. 18; *Russia Cement Co.* v. *Katzenstein,* 109 Fed. 314; *Coty* v. *Ivory Novelties Trading Co.,* 12 Trade Mark Rep. 284; *Gretsch* v. *Schoening,* 238 Fed. 780; *Vitascope Co.* v. *U. S. Phonograph Co.,* 83 Fed. 30; *Walker* v. *Reid,* Fed. Cas. No. 17,084; *Societe Anonyme* v. *Consolidated Filters Co.,* 248 Fed. 358. See also *Farina* v. *Silverlock,* 6 De G. M. & G. 214; Cox's Manual of Trade Mark Cases, 2d ed., pp. 73, 74; *Condy* v. *Taylor,* 56 Law T. Rep. (N. S.) 891; Nims, Unfair Competition

and Trade Marks, 2d ed., 1917, p. 253; *Sweezy* v. *McBrair*, 89 Hun, 155; *Edison* v. *Mills-Edisonia,* 74 N. J. Eq. 521.

The principle announced below is revolutionary and perverts the settled purposes of the Trade Mark Act. It is of vast commercial importance in its implications; opens a new door to control by a wholesaler of the retail trade; creates for the first time a reserved right of property surviving an absolute and unconditioned sale, and restricting, at the mere caprice of the seller, the new owner's right to use the merchandise for the very purpose for which it was bought, i. e., resale.

The cases cited by the court below fall into one or both of two classes, neither of which bears any analogy to the present case: (1) The ordinary cases of the sale of the goods of one manufacturer as those of another; (2) those cases where a manufacturer of two brands or qualities of the same article has given a separate trade mark or distinctive label to each brand or quality. In such case to buy in bulk the inferior brand and then to sell it under the trade mark or label reserved by the manufacturer for the superior brand, is a palpable misrepresentation and fraud.

The distinction between this latter class of cases and the present case is, perhaps, nowhere better put than in *Hennessy* v. *White,* 6 W. W. & A'B. Eq. 216. The cases of *Coca-Cola Co.* v. *Bennett,* 238 Fed. 513; *Hires* v. *Xeappas,* 180 Fed. 952; and *Ingersoll* v. *Doyle,* 247 Fed. 620, are of the former class; *Coca-Cola Co.* v. *Butler & Sons,* 229 Fed. 224, belongs to both the first and second classes; and *Krauss* v. *Peebles Co.,* 58 Fed. 585, is a case of the second class.

*Bourjois & Co.* v. *Katzel,* 260 U. S. 689, involved a sale by one vendor of his own goods under a trade mark and labels belonging exclusively to another.

The argument that a careless or unscrupulous person might adulterate or injure the perfume in rebottling or

repacking, and that, therefore, it is improper to affix Coty's assurance of genuineness, is purely hypothetical and irrelevant and misreads the labels ordered by the District Court. Those labels do not give Coty's assurance. See Sebastian, Trade Marks, p. 630.

The fact that a delicate perfume is involved gives the plaintiff no new or special legal right. It is not the delicacy but the genuineness of the article which determines the legal right.

There is no allegation or evidence that the labels ordered by the District Court did not convey to the ordinary observer the precise meaning which they expressed. *Handel Co.* v. *Jefferson Glass Co.*, 265 Fed. 286; *Wrisley* v. *Iowa Soap Co.*, 122 Fed. 796.

The New York statute, cited below, cannot possibly uphold the unlimited injunction granted by the court below; and, in any event, it was misinterpreted and has no application to the labels ordered by the District Court for either the liquid perfume or the compact.

In any event, even if not entitled to use for its compacts the label ordered by the District Court, the petitioner is entitled to use the label ordered by the District Court for the liquid perfume.

Not only is the construction given by the court below to the Trade Mark Act and to the New York statute erroneous, but it would render them unconstitutional as confiscatory of a vested and essential right of property, and as compelling the owner to sell his goods untruthfully or under a false description. *People* v. *Luhrs*, 195 N. Y. 377; *People* v. *Otis*, 90 N. Y. 48; *Ames* v. *Union Pacific R. R. Co.*, 64 Fed. 165; *Southern Ry. Co.* v. *Greene*, 216 U. S. 414; *Carrollton* v. *Bazzette*, 159 Ill. 283; *Moskowitz* v. *Jenkins*, 202 N. Y. 53; *Tyroler* v. *Warden*, 157 N. Y. 116; *Adams* v. *Tanner*, 244 U. S. 590; *Coppage* v. *Kansas*, 236 U. S. 1; *Lawton* v. *Steele*, 152 U. S. 133.

The registered trade mark purporting to cover the name "L'Origan," is void, because it does not comply with one of the jurisdictional requirements of § 2 of the Trade Mark Act of 1905, under which it purports to have been issued.

*Mr. Asher Blum* and *Mr. Lindley M. Garrison,* with whom *Mr. Hugo Mock* was on the briefs, for respondent.

The general principles of trade-mark law, independent of statute, forbid exposing plaintiff's good-will to the hazards which are inevitably produced by the acts of defendant.

With reference to the compacts, it is well established, and in fact conceded by the defendant, that an unauthorized concern should not be permitted to sell inferior and independently manufactured goods by using the trade marks of a well known manufacturer in any manner whatever. The court below ruled that plaintiff had proved that the manufacturing and packing methods used by defendant had injured the delicate perfume which is the basis of plaintiff's reputation, and this finding of fact should not be overruled when the case has not progressed beyond a motion for preliminary injunction. *Meccano* v. *Wanamaker,* 253 U. S. 136.

It makes no difference in this respect whether a trade mark is protected upon the theory of safeguarding the public or upon the theory of protecting private property, namely the good-will of the owner of the trade mark, because the use of " Coty " and " L'Origan " to sell powders whose perfume has been injured is forbidden under either of these theories.

Trade marks are protected upon the theory that they are private property and the right to the exclusive use of a trade mark is a private monopoly, something akin to that based upon a patent. An unauthorized use will be enjoined even though the public is not injured and

even though the defendant is offering to the public goods similar to or identical with those provided by the owner of the trade mark. *Bourjois & Co.* v. *Katzel,* 260 U. S. 689; *International News Service* v. *Associated Press,* 248 U. S. 215; *Beecham* v. *Jacobs,* 221 U. S. 263; *Omega Oil Co.* v. *Wechsler,* 34 Misc. 441.

In the cases cited by the court below, the relief granted was similar to that granted in the instant case. Discussing: *Ingersoll* v. *Doyle,* 247 Fed. 620; *Coca-Cola Co.* v. *Bennett,* 238 Fed. 513; *Same* v. *Butler & Sons,* 229 Fed. 224; *Same* v. *Stevenson,* 276 Fed. 1010; *Coca-Cola Bottling Co.* v. *Coca-Cola Co.,* 269 Fed. 796; *Coca-Cola Co.* v. *Brown & Allen,* 274 Fed. 481.

The courts, in the *Coca-Cola Cases,* have never held that merely because the selling methods of the Coca-Cola Company afforded opportunity for unscrupulous retailers to deceive and adulterate, the Company should be deprived of its exclusive control over bottled beverages to which its trade mark was applied; and have refused to permit unauthorized rebottlers to use " Coca-Cola " on labels in any manner to designate a beverage made from the genuine " Coca-Cola " syrup.

Plaintiff may be safely entrusted to insure the genuineness of his products, and there is nothing in the record to show that adulteration has been permitted to go on unchecked by him. This defendant, and others in the same position, who have appeared before this Court in *Magnum Co.* v. *Coty,* 262 U. S. 159, cannot complain of plaintiff's lack of promptness and energy in protecting his good will.

The decisions in foreign jurisdictions have granted the same relief as that provided for in the instant case. Browne, Trade Marks, 2d ed., Supp. 1885-1898, § 910, p. 135.

Decisions to the effect that the protection granted to trade marks is limited to preventing the sale of the goods of one manufacturer as those of another, are not authori-

tative, in view of *International News Service* v. *Associated Press, supra;* and of *Bourjois & Co.* v. *Katzel, supra.* Distinguishing: *Hennessy* v. *White,* 6 W. W. & A'B. Eq. 216; *Russia Cement Co.* v. *Frauenhar,* 126 Fed. 228; 133 Fed. 518; *Same* v. *Katzenstein,* 109 Fed. 314; *Apollinaris Co.* v. *Scherer,* 27 Fed. 18; *Gretsch* v. *Schoening,* 238 Fed. 780; *Vitascope Co.* v. *U. S. Phonographic Co.,* 83 Fed. 30; *Societe Anonyme* v. *Consolidated Filters Co.,* 248 Fed. 358; *Condy* v. *Taylor,* 56 L. T. Rep. (N. S.) 891; *Farina* v. *Silverlock,* 6 De G. M. & G. 214. The court below did not overrule *Coty* v. *Ivory Co.,* 12 Trade Mark Rep. 284, because Judge Knox was there merely asked to follow the ruling of the District Court in the instant case.

A man's name, reputation and good will are his exclusive property irrespective of statute, and trespass is committed by one who uses that name, reputation or good will without permission. This is the clear intent of the Trade Mark Act.

The Trade Mark Statute forbids the acts complained of. Act of February 20, 1905, §§ 16, 19; Act of March 19, 1920, §§ 4, 6. Congress never intended that the owner of a trade mark could consent to the use thereof by another upon entirely independent goods. This would be contrary to the theory of a trade mark, which, by its nature, must be exclusive and a monopoly. What Congress had in mind was that the good will of the owner of the trade mark should not be used save as he permitted it.

The Acts of 1905 and 1920 forbid any unauthorized person to reproduce, counterfeit, copy or colorably imitate any trade mark. These words include every act of making every kind of likeness, whether with good intent or with bad intent. Since Congress forbade an unauthorized person to " reproduce " and brought in the idea of consent, it must have had something else in mind than merely passing off goods which were independently manufactured

in their entirety. "Reproduce" means to make a reproduction of, to cause to exist in the mind or imagination, and every act whereby an authorized person uses the reputation of another, as embodied in a registered mark, is forbidden. *Davids Co.* v. *Davids,* 233 U. S. 461. The statute, therefore, makes it unlawful to affix "Coty" or "L'Origan" by means of labels, without plaintiff's consent. Act of 1905, § 20. It makes no distinction upon the ground of explanatory matter being placed on the labels, packages, wrappers, etc.

The labels ordered by the District Court clearly permitted a violation of § 2354, of the Penal Law of New York, because the defendant was permitted to affix the trade marks of plaintiff without his consent. *People* v. *Luhrs,* 195 N. Y. 377.

No questions of constitutionality or of unlawful monopoly are here involved.

The registration for "L'Origan" is valid and is infringed by the use of "L'Origan" in different type upon the labels approved by the District Court.

*Mr. George S. Hornblower, Mr. Raoul E. Desvernine* and *Mr. Frederic D. McKenney,* by leave of Court, filed a brief as *amici curiae.*

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a bill in equity brought by the respondent, Coty, a citizen of France, against Prestonettes, a New York corporation, having its principal place of business in the Southern District of New York. It seeks to restrain alleged unlawful uses of the plaintiff's registered trade marks, "Coty" and "L'Origan" upon toilet powders and perfumes. The defendant purchases the genuine powder, subjects it to pressure, adds a binder to give it coherence and sells the compact in a metal case. It buys

the genuine perfume in bottles and sells it in smaller bottles. We need not mention what labels it used before this suit as the defendant is content to abide by the decree of the District Court. That decree allowed the defendant to put upon the rebottled perfume "Prestonettes, Inc., not connected with Coty, states that the contents are Coty's—(giving the name of the article) independently rebottled in New York," every word to be in letters of the same size, color, type and general distinctiveness. It allowed the defendant to make compacts from the genuine loose powder of the plaintiff and to sell them with this label on the container: "Prestonettes, Inc., not connected with Coty, states that the compact of face powder herein was independently compounded by it from Coty's—(giving the name) loose powder and its own binder. Loose powder — per cent, Binder — per cent," every word to be in letters of the same size, color, type and general distinctiveness. The Circuit Court of Appeals, considering the very delicate and volatile nature of the perfume, its easy deterioration, and the opportunities for adulteration, issued an absolute preliminary injunction against the use of the above marks except on the original packages as marked and sold by the plaintiff, thinking that the defendant could not put upon the plaintiff the burden of keeping a constant watch. 285 Fed. 501. Certiorari granted, 260 U. S. 720.

The bill does not charge the defendant with adulterating or otherwise deteriorating the plaintiff's product except that it intimates rather than alleges metal containers to be bad, and the Circuit Court of Appeals stated that there were no controverted questions of fact but that the issue was simply one of law. It seemingly assumed that the defendant handled the plaintiff's product without in any way injuring its qualities and made its decree upon that assumption. The decree seems to us to have gone too far.

The defendant of course by virtue of its ownership had a right to compound or change what it bought, to divide either the original or the modified product, and to sell it so divided. The plaintiff could not prevent or complain of its stating the nature of the component parts and the source from which they were derived if it did not use the trade mark in doing so. For instance, the defendant could state that a certain percentage of its compound was made at a certain place in Paris, however well known as the plaintiff's factory that place might be. If the compound was worse than the constituent, it might be a misfortune to the plaintiff, but the plaintiff would have no cause of action, as the defendant was exercising the rights of ownership and only telling the truth. The existence of a trade mark would have no bearing on the question. Then what new rights does the trade mark confer? It does not confer a right to prohibit the use of the word or words. It is not a copyright. The argument drawn from the language of the Trade Mark Act does not seem to us to need discussion. A trade mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his. *United Drug Co.* v. *Theodore Rectanus Co.*, 248 U. S. 90, 97. There is nothing to the contrary in *Bourjois & Co.* v. *Katzel*, 260 U. S. 689. There the trade mark protected indicated that the goods came from the plaintiff in the United States, although not made by it, and therefore could not be put upon other goods of the same make coming from abroad. When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo. *Canal Co.* v. *Clark*, 13 Wall. 311, 327.

If the name of Coty were allowed to be printed in different letters from the rest of the inscription dictated by the District Court a casual purchaser might look no

further and might be deceived.   But when it in no way stands out from the statement of facts that unquestionably the defendant has a right to communicate in some form, we see no reason why it should not be used collaterally, not to indicate the goods, but to say that the trade-marked product is a constituent in the article now offered as new and changed.   As a general proposition there can be no doubt that the word might be so used. If a man bought a barrel of a certain flour, or a demijohn of Old Crow whiskey, he certainly could sell the flour in smaller packages or in former days could have sold the whiskey in bottles, and tell what it was, if he stated that he did the dividing up or the bottling.   And this would not be because of a license implied from the special facts but on the general ground that we have stated.   It seems to us that no new right can be evoked from the fact that the perfume or powder is delicate and likely to be spoiled, or from the omnipresent possibility of fraud.   If the defendant's rebottling the plaintiff's perfume deteriorates it and the public is adequately informed who does the rebottling, the public, with or without the plaintiff's assistance, is likely to find it out.   And so of the powder in its new form.

This is not a suit for unfair competition.   It stands upon the plaintiff's rights as owner of a trade-mark registered under the act of Congress.   The question therefore is not how far the court would go in aid of a plaintiff who showed ground for suspecting the defendant of making a dishonest use of his opportunities, but is whether the plaintiff has the naked right alleged to prohibit the defendant from making even a collateral reference to the plaintiff's mark.   We are of opinion that the decree of the Circuit Court of Appeals must be reversed and that that of the District Court must stand.

*Decree reversed.*

Mr. Justice McReynolds dissents.