JACK DANIEL DISTILLERY, INC.,
Plaintiff,

v.

HOFFMAN DISTILLING COMPANY,
Defendant
and
Frank Silverman & Company,
Intervening-Defendant.

No. 3532.

United States District Court
W. D. Kentucky,
Louisville Division.

Dec. 15, 1960.

John J. Hooker, Nashville, Tenn., Ben H. Morris, Louisville, Ky., for plaintiff.

Charles B. Cannon, Chicago, Ill., John K. Skaggs, Jr., Louisville, Ky., and Max W. Petacque, Chicago, Ill., for defendants.

BROOKS, Chief Judge.

The plaintiff, Jack Daniel Distillery, Lem Motlow, Prop., Inc., brings this action against Hoffman Distilling Company alleging unfair competition and trademark infringement and seeks to enjoin the intervening defendant, Frank Silverman and Company, a co-partnership doing business as Ezra Brooks Distilling Company, from continuing to imitate its methods of advertising and packaging Jack Daniel's Black Label whiskey.

The evidence shows that the Jack Daniel Distillery was founded in 1866 and remained in the family of the founder until sold to Brown-Forman Distillers Corporation in 1956. It is the only legal distillery in Tennessee and its product is officially recognized by the Alcohol and Tobacco Tax Unit of the Federal Government as one of the four distinct types of whiskey manufactured in the United States, being designated as Tennessee sour mash whiskey as distinguished from bourbon whiskey, scotch whiskey and rye whiskey. The reason for this distinction is attributed to a process employed in the production of Jack Daniel's whiskey. After Jack Daniel's whiskey has been distilled, but before it is put in barrels, it is poured into large vats at the bottom of which there is from eight to ten feet of finely ground, tightly packed, sugar maple charcoal. It requires from eight to ten days from the time the whiskey is placed in these vats until it finally seeps through the charcoal. It is claimed that this process removes impurities and mellows and makes the finished product more palatable. In any event it is generally recognized that Jack Daniel's whiskey has a distinctive taste, and with one minor exception it is also known as the most expensive sour mash whiskey sold.

The Jack Daniel Distillery started as a small distillery in a small town in Tennessee. In 1952, however, national advertising was undertaken and by 1958 approximately 3½ million dollars had been expended in the promotion of its product. Its sales increased by more than 900% in the six-year period ending in 1956, as a result of which Jack Daniel's whiskey became in short supply and it was necessary to place it on allocation limiting wholesale distributors to various percentages of whiskey they had purchased in former years. In April 1957, about a year after Jack Daniel's whiskey became in short supply and had advertised this fact, a whiskey with the brand name of Ezra Brooks was placed on the market for the first time by the intervening defendant. It is this brand that plaintiff alleges unfairly competes in the same market with its brand Jack Daniel's Black Label.

It appears from the evidence that while the intervening defendant does business as the Ezra Brooks Distilling Company, this partnership does not own or operate a distillery. The whiskey that is distributed under its brand is bottled at the Hoffman Distilling Company, a small Kentucky distillery which is a defendant in this action, and some of the whiskey bottled under the brand name Ezra Brooks is produced by the Hoffman Distilling Company. The rest of the whiskey so marketed is the product of other distilleries manufacturing sour mash bourbon whiskey and is purchased in the open market by the intervening defendant.

Although the brand names Jack Daniel's and Ezra Brooks and the names of the Jack Daniel Distillery and the Ezra Brooks Distilling Company appear prominently on their respective labels, it is clear that many features of the Jack Daniel's package and methods of advertising are imitated by Ezra Brooks. Jack Daniel's uses a square bottle and a black and white wrap-around label. Ezra Brooks employs a square bottle and a black and white wrap-around label. Jack Daniel's on its label uses the words, "90 Proof by Choice." Ezra Brooks on its label employs the expression "90 Proof for Character." Jack Daniel's pictures a small old-time distillery on its label and Ezra Brooks' label follows suit. Jack Daniel's for many years advertised that its whiskey is "Rare Old Sippin' Whiskey" and otherwise uses the word "Sippin'" to describe its product. Ezra

Brooks' label bears the legend "Real Sippin' Whiskey." Jack Daniel's has consistently advertised its whiskey as "Charcoal Mellowed Drop by Drop," this expression being a reference to the unique method of filtering its whiskey through charcoal before it is warehoused for aging. Ezra Brooks features on its label the words "Charcoal Filtered" and in its advertising "Every Sip is Mellowed 'Cause Every Drop is Charcoal Filtered." The charcoal filtration of Ezra Brooks whiskey consists of placing seven ounces of activated charcoal in four hundred gallons of aged whiskey and agitating the whiskey for varying periods of time up to twenty-four hours. Jack Daniel's uses a small black and white cardboard neckpiece on its bottle extolling its whiskey and distillery, and this feature has been adopted by Ezra Brooks with closely related resemblances both as to appearance and content. From the time Ezra Brooks first came on the market it has also imitated the Jack Daniel's story by advertising that its product was in short supply and Jack Daniel's use of the expression "There isn't quite enough to go around" was matched in Ezra Brooks' advertisements by the statement "There just ain't enuf to go around." This line of advertising was followed by the defendant in spite of the fact that there was no shortage of its supply as the evidence clearly shows that there was always available in the market an ample supply of the type whiskey bottled under the brand name of Ezra Brooks.

■ From this brief statement of the evidence it is necessarily concluded that all of these similarities were not adopted by accident but that the defendant intentionally copied and imitated the appearance of the well-established and attractive Jack Daniel's Black Label package and advertising techniques for its new and unknown brand Ezra Brooks. The obvious purpose of the copying was to solicit customers of the plaintiff who could not obtain Jack Daniel's whiskey while there was a shortage in supply and also to appeal to all other prospective consumers who would be attracted by the advertising and packaging methods developed by the plaintiff. It is the continuance of these imitating tactics that the plaintiff seeks to enjoin, but regardless of how disapproving the courts may be of such practices, they cannot legislate the morals of the market place. To sustain its claim for relief the plaintiff must establish by a preponderance of the evidence that the defendant is not merely competing with the plaintiff but is guilty of unfair competition such as is prohibited by law.

The defendant takes the position that even if it should be found it has imitated the Jack Daniel's Black Label package and advertising methods that such imitations fall far short of actionable unfair competition. It claims that the plaintiff has failed to establish that the purchasing public has been deceived or confused by the similarities of the two brands and asserts that no likelihood of confusion exists because of the obvious differences in the packages and because the two brands are clearly marked both by brand name and by source of manufacture.

■ The law of unfair competition to be applied to the facts of this case is concisely set forth in the Restatement of Torts, Sec. 741, under the title "Imitation of Appearance," pages 622 and 623.[1] From this statement of the law the defendant has the right to copy the Jack Daniel's package and advertising unless

---

1. "* * * The privilege to engage in business and to compete with others implies a privilege to copy or imitate the physical appearance of another's goods. The public interest in competition ordinarily outweighs the interest in securing to a person the rewards of his ingenuity in making his product attractive to purchasers. But the privilege to imitate may be limited by legislative enactment.

Thus, in order to encourage invention or art, a patent or copyright may, for a limited period of time, protect one's interest in the physical appearance of his goods. The privilege is also qualified by the law of Torts to the extent necessary in order to prevent the sale of one's goods as those of another and to prevent the procurement of the means of imitation by unfair methods * * *

both (1) the imitated features have acquired generally in the market a special significance identifying the source of the other's goods, that is, have acquired a secondary meaning, and (2) that prospective purchasers will likely be confused by the imitation and misled to believe that Ezra Brooks whiskey was produced by the Jack Daniel Distillery. To establish these two essential requisites of unfair competition, "secondary meaning" and "likelihood of confusion", the plaintiff introduced in evidence an inconclusive market survey which did little more than reflect that plaintiff's products had been advertised, and also introduced the depositions of various retail whiskey dealers. There was no evidence presented, however, that any retail dealer or any representative of the defendant ever sold or passed off or attempted to sell or pass off Ezra Brooks whiskey for Jack Daniel's whiskey, and there was no showing by any witness that a single member of the consumer public was ever confused or misled into buying a bottle of Ezra Brooks whiskey thinking it was Jack Daniel's whiskey. The most the evidence does disclose in addition to the package and advertising copying is that some retail dealers when out of Jack Daniel's whiskey would recommend Ezra Brooks to their customers stating generally that it was a good substitute for Jack Daniel's Black Label and the making of other similar representations in an attempt, not to deceive the customers, but to make a sale by substituting a different brand for the one not on the shelf. This type of evidence does not sustain the plaintiff's claim that its label, bottle, slogans and expressions by long and continued use and by extensive advertising have combined to create a "brand image" in the public mind and the "brand image" has acquired a secondary meaning. Nor does it sustain the claim that because of the similarities of the packages and advertising that there is likelihood of confusion among ordinary retail customers as to the producers of the two brands of whiskey.

In unfair competition the essence of the wrong is the sale of the goods of one manufacturer for those of another. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; Prestonettes, Inc. v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731; Howe Scale Co. of 1886 v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 25 S.Ct. 609, 49 L.Ed. 972; Hemmeter Cigar Co. v. Congress Cigar Co., Inc., 6 Cir., 118 F.2d 64. Absent a monopoly right such as is conferred by ownership of a valid patent or trademark one has the right to copy a competitor's product even if he gets a free ride by reaping an advantage from his competitor's advertising, provided he does not deceive the public by passing off his product as that of his competitor. Swank, Inc. v. Anson, Inc., 1 Cir., 196 F.2d 330. As pointed out by Judge McAllister in West Point Mfg. Co. v. Detroit Stamping Co., 6 Cir., 222 F.2d 581, 591, certiorari denied 350 U.S. 840,

Sec. 741, Elements of Unprivileged Imitation

"One who markets goods, the physical appearance of which is a copy or imitation of the physical appearance of the goods of which another is the initial distributor, markets them with an unprivileged imitation, under the rule stated in Section 711 if his goods are of the same class as those of the other and are sold in a market in which the other's interest is protected, and

"(a) he copied or imitated the appearance after obtaining access to or procuring the goods, or their labels, wrappers, containers, styles or designs by improper means or on his promise not to copy or imitate them, [(a) is not applicable in this case] or

"(b) the copied or imitated feature has acquired generally in the market a special significance identifying the other's goods, and

"(i) the copy or imitation is likely to cause prospective purchasers to regard his goods as those of the other, and

"(ii) the copied or imitated feature is nonfunctional, or, if it is functional, he does not take reasonable steps to inform prospective purchasers that the goods which he markets are not those of the other."

76 S.Ct. 80, 100 L.Ed. 749, there is nothing unlawful in copying the unpatented products of another down to the last detail, except in so far as the resulting similarity may become a means of securing the original producer's customers through believing that the copied goods are those of the original producer. Citing Electric Auto-Lite Co. v. P. & D. Mfg. Co., 2 Cir., 109 F.2d 566, 567; In Cheney Bros. v. Doris Silk Corp., 2 Cir., 35 F.2d 279, 280. In Tas-T-Nut Co. v. Variety Date & Nut Co., 6 Cir., 245 F.2d 3 it is stated that the identical imitation of the goods of another does not in itself constitute unfair competition. This is so because the public interest in competition ordinarily outweighs the interest in securing to a person the rewards of his ingenuity in making his product attractive to purchasers. See James Heddon's Sons v. Millsite Steel & Wire Works, Inc., 6 Cir., 128 F.2d 6; Dennison Mfg. Co. v. Scharf, 6 Cir., 135 F. 625; Globe Werneke Co. v. Fred Macy Co., 6 Cir., 119 F. 696. And where it does not appear that the public has been moved in any degree to buy an article because of its source, an action for unfair competition does not lie. American Fork & Hoe Co. v. Stampit Corp., 6 Cir., 125 F.2d 472. And quoting from West Point Mfg. Co. v. Detroit Stamping Co., supra, "Confusion for which a copier is held responsible is not confusion resulting from inability on part of public to distinguish between similar articles, but confusion as to origin, and there is unfair competition only if there is such relationship or analogy between goods of a complainant and those of a copier that ordinary retail purchasers are likely to be deceived as to their origin. * * * Similarity sufficient to justify relief for trade-mark infringement must be such as would cause confusion of any appreciable number of ordinarily prudent purchasers as to source of goods which consumers buy without having two products or their trade-marks before them for comparison." [222 F.2d 582].

■ As stated above the two brands are clearly marked both by brand name and source of production. The Ezra Brooks label prominently carries the name "Ezra Brooks Rare Old Genuine Sour Mash Kentucky Straight Bourbon Whiskey" with the statement "Bottled by Ezra Brooks Distilling Co., Lawrenceburg, Anderson County, Ky." The Jack Daniel's Black Label is conspicuously marked "Jack Daniel's Old No. 7 Brand Quality Tennessee Sour Mash Whiskey" with the statement "Distilled and Bottled by Jack Daniel Distillery, Lem Motlow, Prop., Inc., Lynchburg, Tenn." With the brands so clearly identified there is no likelihood of confusion and an ordinary prudent purchaser interested in source could not be deceived and misled to believe that the Ezra Brooks brand was produced by the Jack Daniel Distillery. See Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73.

For the reasons stated plaintiff's claim of unfair competition cannot be upheld.

■■ Plaintiff also seeks trademark protection of its expression "Rare Old Sippin' Whiskey" registered by the Commissioner of Patents in the Supplemental Register on March 15, 1955, under a Certificate of Registration No. 603,460 and under a new Certificate of Registration bearing the same number dated November 27, 1956. The proof discloses, however, that this trademark has been abandoned without intention to renew its use since the latter part of 1953 when the Alcohol and Tobacco Tax Unit prohibited the use of the words "Rare" and "Old" together unless the age of the whiskey was specified. Discontinuance of a trademark with intent not to resume its use for two consecutive years is an abandonment of the trademark. Sec. 45 of the Trademark Act of July 5, 1956 (The Lanham Act), 15 U.S.C.A. § 1127.

Defendant will tender appropriate judgment.