**MONSANTO CHEMICAL COMPANY, Successor by merger to the Chemstrand Corporation, Plaintiff,**

**v.**

**PERFECT FIT PRODUCTS MANUFACTURING CO., Inc., Defendant.**

United States District Court
S. D. New York.
March 31, 1964.

494

Brumbaugh, Free, Graves & Donohue, New York City, for plaintiff, Walter H. Free, John F. Neary, Jr., and Richard A. Lochner, New York City, of counsel.

Natanson & Gordon, New York City, for defendant, Jay F. Gordon, New York City, of counsel.

McLEAN, District Judge.

This is an action for trademark infringement, unfair competition, and false description of goods. Plaintiff seeks an injunction, an accounting of defendant's profits, damages and expenses. An injunction pendente lite was granted on consent on December 31, 1958 and is still in effect.

Complete findings of fact and conclusions of law are filed herewith and will not be repeated in detail here. This opinion will be limited to a brief statement of the court's reasons for the result embodied in its findings and conclusions.

I am satisfied that plaintiff is entitled to a permanent injunction because (1) defendant infringed plaintiff's trademarks; (2) the infringement was intentional and in bad faith; (3) plaintiff did not acquiesce in defendant's use of plaintiff's trademarks; (4) defendant did not act promptly and effectively to withdraw the infringing labels after it had been notified of plaintiff's claim.

Defendant used plaintiff's A-Acrilan trademark on defendant's product in a primary trademark sense without plaintiff's knowledge or consent. The bags bearing this label did not show the name of defendant as the manufacturer or seller. The conclusion is inescapable that defendant intended to lead customers to believe that the mattress pads contained 100 per cent acrilan and that they were manufactured or sponsored by plaintiff, and that such confusion was likely to occur. This is an infringement. B.B. & R. Knight, Inc. v. W. L. Milner & Co., 283 F. 816 (N.D. Ohio 1922).

Defendant's second attempt was no better. These bags contained inserts bearing plaintiff's trademark "Acrilan" in large red letters. Here again the word was used in a primary trademark sense. These bags, it is true, bore defendant's name, but nevertheless the use of plaintiff's trademark was unauthorized, the same likelihood of confusion existed and therefore the use constituted an infringement. See Lambert Pharmacal Co. v. Listerated Co., 24 F.2d 122 (S.D.Tex.1928).

Defendant's third attempt was the "Nylon-Acrilan" insert. Again these words were prominently displayed, without any statement of the percentages of the component fibers. In fact, plaintiff's tests of certain of these mattress pads revealed that they contained little or no acrilan. In my opinion, this label was not a fair collateral use of plaintiff's trademark within the rule of Prestonet-

tes, Inc. v. Coty, 264 U.S. 359, 44 S. Ct. 350, 68 L.Ed. 731 (1924).

I have no doubt that defendant deliberately attempted to capitalize on the reputation which plaintiff had established for its acrylic fiber. There is an air of furtiveness in defendant's dealings and a lack of candor in its professed willingness to correct its error. This is illustrated by the fact that the sample pad which defendant submitted to plaintiff was in an unmarked bag, although defendant obviously by that time intended to market the pad in a bag bearing plaintiff's trademark. It is further illustrated by the fact that when defendant purported to advise plaintiff of the customers to whom the mattress pads with the first offending label had been shipped, so that plaintiff could satisfy itself that defendant had withdrawn them from the market, defendant omitted from the list of customers the name of the customer who had purchased the greater part of the pads. Mention may also be made of defendant's willingness to represent on the labels that the pads were "allergy-free," "dustproof," "mothproof," etc., despite the fact that no tests were made by defendant which would justify such a representation. Similarly, defendant's attempts on various occasions to shift the blame to "the manufacturer," i. e., the brother-in-law of defendant's principal officer, do not ring true. Apparently defendant had given a similar excuse on another occasion when it was detected in infringement. The testimony of the brother-in-law, although evasive enough on many subjects, at least makes clear that the responsibility for the blend of fibers in the pads and for the wording of the labels rests not with the manufacturer but with defendant.

As far as acquiescence is concerned, it is entirely clear that plaintiff did not know of or consent to defendant's use of the A-Acrilan and Acrilan labels. With respect to the Nylon-Acrilan label, although it appears that there was some discussion between the parties concerning it, I accept plaintiff's version of these dealings and find that plaintiff did not consent to defendant's employment of the label in the manner in which defendant proceeded to use it.

■ This is not a case in which an infringer made an honest mistake which he promptly corrected upon being apprised of it. Consequently, even though it may well be true that after this action was begun in November 1958 plaintiff discontinued the sale of mattress pads under defendant's trademarks, the circumstances here do not bring this case within the rule of those decisions which have held that voluntary discontinuance of the infringement eliminates the need for a permanent injunction. Consequently, an injunction will be granted.

■ Damages are another matter. In my opinion plaintiff's evidence falls short of proving that plaintiff sustained any damage at all by reason of defendant's infringement. Even if it could reasonably be inferred from the evidence that some damage occurred, there is nothing upon which I could properly base a finding as to its amount.

Plaintiff claims that its goodwill was impaired. This is on the theory that purchasers of defendant's mattress pads found them of unsatisfactory quality, and believing them to be filled with acrilan, they thereby lost confidence in plaintiff's acrylic fiber. But there is no evidence of this. The theory rests upon mere supposition.

Plaintiff claims that because defendant put on the market a mattress pad to retail at $3.98 which purported to be 100 per cent acrilan filled, other mattress pad manufacturers were dissuaded from buying acrilan from plaintiff because they believed that they could not manufacture a pad with 100 per cent acrilan fill at a cost which would permit them to compete with defendant's product. But the evidence on this is extremely scanty, consisting only of the testimony of an employee of plaintiff as to what certain prospective customers said to him. No customers were called as wit-

nesses, no mattress pad manufacturers testified as to what motivated them in the conduct of their business.

Defendant was the first to use acrilan in a mattress pad. It decided to do so without consulting plaintiff and in fact when plaintiff sold its acrilan to defendant, it had been led to believe that defendant intended to use it in coverlets. Before defendant's pad appeared on the market, plaintiff had had no success in interesting other pad manufacturers in acrilan. It appears that the usual retail price of a mattress pad of the relevant type and size is $3.98 or less. If other manufacturers decided against acrilan because it was too expensive, they may well have reached that conclusion in any case without regard to defendant's comparatively shortlived effort in this field. In 1959, it is true, one manufacturer did buy acrilan for a mattress pad to retail at $5.98, but this manufacturer, for what reason does not appear, ultimately encountered financial difficulties and became involved in Chapter XI proceedings.

In short, the evidence is not persuasive that there was a substantial market for acrilan for mattress pads at any time or that such market as existed was affected adversely by defendant's conduct. Plaintiff's total sales of acrilan for all purposes afford no basis of damage, for the sales during the period in question did not diminish, but on the contrary increased. I conclude, therefore, that the evidence here does not justify an award of damages to plaintiff. The factual situation in Deering, Milliken & Co. v. Gilbert, 269 F.2d 191 (2d Cir. 1959), relied upon by plaintiff, does not seem to me at all analogous to the present case.

■ Plaintiff also seeks an accounting of any profits realized by defendant in the sale of the mattress pads. Where a defendant has intentionally infringed plaintiff's trademark, it might be thought unjust to permit him to retain the fruits of his infringement. See Admiral Corporation v. Price Vacuum Stores, 141 F.Supp. 796 (E.D.Pa.1956).

The parties, however, are not competitors. Plaintiff manufactures and sells fibers, not mattress pads. It has been squarely held by the Court of Appeals in this Circuit that in such a situation an accounting of profits may not be allowed, because defendant's profits are not an equitable measure of plaintiff's damage. Triangle Publications v. Rohrlich, 167 F.2d 969 (2d Cir. 1948); Admiral Corporation v. Penco Inc., 203 F. 2d 517 (2d Cir. 1953).

I am bound by these decisions. Accordingly, an accounting of profits is denied.

■ Plaintiff is entitled to its costs, including legal fees and expenses. Maternally Yours v. Your Maternity Shop, 234 F.2d 538 (2d Cir. 1956); Singer Mfg. Co. v. Singer Upholstering & Sewing Co., 130 F.Supp. 205 (W.D.Pa.1955).

Some evidence as to the amount of these fees and expenses was introduced at the trial. No evidence was offered, however, as to their reasonableness. This would seem to be a necessary element of the proof. Moreover, a question has been raised, but not fully briefed, as to whether it is appropriate to award plaintiff its reasonable fees and expenses for the entire period from 1958 to date, or whether the award should be limited to those fees and expenses incurred up to the date of the injunction pendente lite. Under these circumstances, it seems best to hold a further hearing at which the parties may offer such additional evidence as they may desire on the amount and reasonableness of the fees and expenses and may direct the court's attention to any further authorities on the subject. Such a hearing will be held before me at 10:00 A.M. on April 15, 1964. Submission of a final judgment may await the conclusion of that hearing.