**MEAD JOHNSON & COMPANY,**
Plaintiff,

v.

**BABY'S FORMULA SERVICE, INC.,**
James Leo Gorman, Anthony F. Damanda, Stuart F. Gorman, and Mrs. Rosalind Gorman, Defendants.

No. 66–1069–Civ.

United States District Court
S. D. Florida.

June 12, 1967.

Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., Richard E. Alexander, Chicago, Ill., for plaintiff.

Scott, McCarthy, Steel, Hector & Davis, and Robert C. Lane, Miami, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CABOT, District Judge.

This cause came on for trial before the Court, and the Court has considered the testimony and other proofs submitted by the parties, together with the pleadings, and the memorandum briefs and suggested findings of fact and conclusions of law later submitted by counsel, and makes the following

### FINDINGS OF FACT:

1. Plaintiff, Mead Johnson & Company, is an Indiana corporation authorized to do business in the State of Florida.

2. Defendant, Baby's Formula Service, Inc., is a Florida corporation, and the individual defendants, James Leo Gorman, Anthony F. Damanda, Stuart F. Gorman and Mrs. Rosalind Gorman, are citizens of Miami, Florida, and are officers and directors of the corporate defendant.

3. In this action plaintiff seeks an injunction, accounting, damages and attorneys' fees for alleged trademark infringement, unfair competition and false designation of origin. Defendants deny the plaintiff's claims and assert as defenses estoppel, laches, acquiescence and good faith. The corporate defendant counterclaims for declaratory judgment seeking a declaration of its rights in connection with the use of the trademark involved.

4. Corporate defendant admits that the registered trademark of the plaintiff is used by it, but the main defense in addition to those set out above is that this use is an open, honest and lawful one, not involving any confusion to the public.

5. The plaintiff, Mead Johnson & Company, is a nation-wide drug and nutritional products firm which owns the trademark "Enfamil." The mark "Enfamil" has been in use since 1959 and the plaintiff uses this trademark to market a baby formula product in ready-to-use and concentrated form.

6. The concentrate has been produced in powder and liquid form since 1959. This concentrate is used by adding water to it.

7. The ready-to-use form of "Enfamil" marketed by plaintiff is an "interchangeable" product with the concentrate so that either may be used where "Enfamil" is specified for a baby's use.

8. The ready-to-use version comes in two forms. The first was in cans with a "nurser kit" which would allow a nipple to be used directly with the can. This was developed in 1964 and it was conceded by plaintiff that this did not work and the "nurser kits" were subsequently withdrawn from the market.

9. The other version of the ready-to-use product of Mead Johnson is in disposable glass bottles and is the "Enfamil" product presently marketed by the plaintiff, which is comparable to defendant's product.

10. The plaintiff markets its ready-to-use "Enfamil" product under the name "Nursette."

11. It is undisputed that Mead Johnson & Company has provided substantial advertising and promotional efforts for the "Enfamil" products since their first development and introduction and the plaintiff's right to use the trade name is not in question in this suit.

12. The defendant, Baby's Formula Service, Inc., has been organized since 1959, and since that time has been engaged in the formulation of babies' formulas, including formulas prepared with ingredients obtained from the plaintiff as well as different formulas using other well known baby food products such as "Similac."

13. Since 1959, one of the products so formulated has been "Enfamil" which was prepared by the corporate defendant by use of the concentrate and dilution of that concentrate so that it might be consumed by infants.

14. In 1964, after experimenting with the process, the corporate defendant instituted a new process which allowed the product to be stored without refrigeration. The product was first marketed in grocery stores in May, 1966, but prior to that time, the product was sold to hospitals and home customers to whom the products were delivered.

15. In other words, while before 1966 defendants were a service operation, in or about May, 1966, the defendants changed their basic manner of operation to include sales at retail. They began marketing their ready-to-use infant formulas in grocery stores in cartons which contained plaintiff's trademark "Enfamil" on a yellow label on the side of a standard carton used for all products, the word "Enfamil" being in letters

much larger than the list of other ingredients referred to.

16. Subsequently, the defendant changed its shelf display so that the package was turned sideways to expose the yellow label containing the word "Enfamil" in large letters.

17. Shortly after that a dominant red label was placed on the package with the word "Enfamil" in more conspicuous display than before.

18. Defendants then adopted another carton which further emphasized the trademark "Enfamil" and did not indicate that the product was manufactured or prepared by the corporate defendant, Baby's Formula Service, Inc., of Miami, Florida.

19. Defendants then changed their cap to one prominently portraying the trademark "Enfamil," apparently to go with the new carton design.

20. A substantial part of the success of defendant's sales program appears to have resulted from defendant's use of the trademark "Enfamil" in a dominant manner in order to trade upon the reputation established by the plaintiff in connection with the trademark.

21. The question of defendant's product quality controls was raised during the trial. The Court finds that the products produced by the corporate defendant are of good quality, and further that adequate government inspection exists to insure proper quality controls. In addition, the Court finds that defendant, Baby's Formula Service, Inc., has adequate internal quality controls.

22. The corporate defendant, Baby's Formula Service, Inc., in offering for sale its ready-to-use product in cartons such as plaintiff's Exhibits 32 and 33, dominantly displaying plaintiff's registered trademark "Enfamil," is likely to cause confusion and deception of the purchasing public who will be induced to believe from the use of the trademark "Enfamil" that the source of the infant formula is Mead Johnson & Company, and that the product displaying the trademark "Enfamil" is plaintiff's infant formula and is vouched for and guaranteed by plaintiff.

23. The defendants have asserted that they acted in good faith. It appears that the corporate defendant consulted with its attorney and acted on his advice. The Court finds that defendants acted in good faith and did not attempt to use the trademark in any dishonest or unethical way.

24. The defenses of estoppel, laches and acquiescence are raised by the defendants. The facts indicate that the plaintiff knew of and encouraged the use of the "Enfamil" product and the "Enfamil" name by the corporate defendant.

25. The use to which the concentrate was put was known to the plaintiff and encouraged by it. That use was the distribution to hospitals and home customers of the diluted "Enfamil" product, and this diluted product was sold with a label using the word "Enfamil." The labelling was known to the plaintiff through its agent, Mr. Kronen, although he did not recall the exact form of labelling.

26. This usage has been continuous and was not challenged by the plaintiff until the filing of this cause.

27. In the Spring of 1966, plaintiff's agent, Mr. Kronen, contacted defendant because it wanted to set up accounting controls to assure that none of the free concentrate furnished by Mead Johnson & Company for purposes of promotion was used in defendant's production of the products for grocery store marketing. The corporate defendant was using its new package for discharge packs, yet the plaintiff did not object to the use of the name "Enfamil" thereon, and in fact plaintiff's representatives had, prior to this meeting, already seen newspaper advertisements which indicated that the "Enfamil" product of defendant was to be distributed through grocery stores.

28. It was not until August, 1966, that the plaintiff objected to the use by the defendant. Since 1959 the corporate defendant has been openly using the

name "Enfamil" and the plaintiff's inaction over a period of years is sufficient to support the affirmative defenses of laches and acquiescence.

29. The Court notes that plaintiff's Count III, based on Title 15 U.S.C. § 1125, false designation of origin, was omitted from the pretrial stipulation. It appears that Count III of the complaint has been abandoned by the plaintiff, but even if not, no evidence of false designation was presented and the corporate defendant truthfully labelled its products showing the origin of them.

30. The defendants, James Leo Gorman, Stuart F. Gorman, Mrs. Rosalind Gorman and Anthony F. Damanda, were made parties to this suit under the umbrella allegations in paragraph 3 of the complaint. The evidence is not sufficient to support a claim against these individuals, and this action is to be dismissed against the individual defendants.

From all of which the Court makes the following

### CONCLUSIONS OF LAW:

1. This Court has jurisdiction of the subject matter and the parties by virtue of 15 U.S.C. § 121, 28 U.S.C. § 1332, and 28 U.S.C. § 1338(a) and (b).

2. The acts of the defendant, Baby's Formula Service, Inc., in having used cartons dominantly displaying plaintiff's registered trademark "Enfamil" is likely to cause confusion and deception of the purchasing public and such acts of the defendant constitute an infringement of plaintiff's Federal Trademark Registration No. 696,543, and Registration No. 800,782, and are an infringement of plaintiff's Florida registrations for the trademark "Enfamil" as defined in Fla.Stat. § 495.11, F.S.A., but the Court finds that no unfair competition exists under either federal or Florida law.

3. Acquiescence of long standing and the defense of laches have been shown and plaintiff, Mead Johnson & Company, is not entitled to an accounting, an award of damages nor attorneys'

fees. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828 (1877); Anheuser-Busch v. DuBois Brewing Co., 175 F.2d 370 (3d Cir. 1949); Ambrosia Chocolate Co. v. Ambrosia Cake Bakery, 165 F.2d 693 (4th Cir. 1947), cert. den. 333 U.S. 882, 68 S.Ct. 914, 92 L.Ed. 1157; Oakford Co. v. Kroger Co., 157 F.Supp. 453 (S.D. Ill.N.D.1957).

4. However, infringement having been proven, a future injunction enjoining defendant, Baby's Formula Service, Inc., from continued use of plaintiff's trademark "Enfamil" in such a manner as to cause confusion and deception of the purchasing public shall be entered, and said defendant shall comply with the principles set out in Prestonettes v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924), and more specifically defendant shall indicate on all future packages:

A. That Baby's Formula Service, Inc., is not connected with, authorized by, or associated with Mead Johnson & Company.

B. That "Enfamil" concentrate in liquid form was mixed with demineralized water, subjected to sterilizing temperatures and bottled and sealed by the corporate defendant in its own bottles and cartons.

C. The foregoing shall be indicated in words containing letters of the same size, color, type and general distinctiveness.

D. The trademark "Enfamil" shall not be headlined in different letters from the rest of the inscription nor shall it dominate the major panels of defendant's packages.

5. As to the defendant's rights, the Court declares that the corporate defendant has the right to continue to use the name "Enfamil," but it shall truthfully designate the contents of the bottles and packages containing the product. Such bottles and packages shall show the true relation of "Enfamil" to defendant's product, and defendant shall take any and all measures necessary so as not to deceive the public, in accord-

ance with the directives described by the Court in the preceding paragraph.

6. The motions to dismiss made by the individual defendants during the trial should be granted.

Accordingly, it is ordered and adjudged that a proposed form of judgment in accordance with the foregoing shall be submitted by counsel within ten (10) days from the date of this order.