**SHELL OIL COMPANY, a Delaware Corporation, Plaintiff,**

v.

**COMMERCIAL PETROLEUM, INC., a North Carolina Corporation, Defendant.**

**No. ST–C–88–34–P.**

United States District Court, W.D. North Carolina, Statesville Division.

Nov. 29, 1989.

---

Robert J. Wishart, Wishart, Norris, Henninger & Pittman, Burlington, N.C., Kenneth L. Muller, Shell Oil Co., Houston, Tex., and Thomas J. Ward and Harold R. Bruno, III, Ward, Lazarus and Grow, Washington, D.C., for plaintiff.

Roger Lee Edwards, Mooresville, N.C., for defendant.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, District Judge.

This is a civil action brought by the Plaintiff, Shell Oil Company asserting claims of trademark infringement and unfair competition against the Defendant, Commercial Petroleum, Inc., in connection with the sale of bulk lubricating oil produced by the Plaintiff and marketed under its trademarks "Shell," "Rotella" and "Shell Rotella T." The Plaintiff contends that the conduct of the Defendant in marketing oil under these trademarks without its authority gives rise to causes of action under two sections of the Lanham Trademark Act, 15 U.S.C.A. Sections 1114 and 1125(a), under the North Carolina Unfair Trade Practices Act, N.C.Gen.Stat. 75–1.1 and 75–16 and under the North Carolina common law of unfair competition and trademark infringement. The Defendant denies any wrongdoing alleging and contending that it purchased the oil from authorized Shell Oil dealers and has a right to resell it to its customers.

The Court sitting without a jury in Statesville, North Carolina, tried the case and after full consideration of the evidence, briefs, and arguments of counsel now enters its findings and conclusions.

The Plaintiff, Shell Oil Company (Shell), is a Delaware corporation, with its principal place of business located at One Shell Plaza, Houston, Texas and the Defendant, Commercial Petroleum, Inc. (Commercial), is a North Carolina corporation with its principal place of business located at Mooresville, North Carolina.

Shell owns U.S. Trademark Registration No. 286,178, issued August 18, 1931 for the mark "Shell" and U.S. Registration No. 645,323, issued May 14, 1957 for the mark "Rotella." Shell uses its trademarks, "Shell," "Rotella" and "Shell Rotella T" to identify petroleum products manufactured and distributed in the United States and elsewhere. Specifically, "Rotella" and "Shell Rotella T" identify the lubricating oils that the Plaintiff produces primarily for use in heavy duty trucks and machinery. These marks are often used in combination with one another and continue to be widely publicized through substantial advertising in North Carolina and the United States and the sales of "Shell Rotella T" lubricating oil have been and are substantial. Shell has expended many thousands of dollars in advertising and promoting "Shell Rotella T" lubricating oil, and sales from such oil have amounted to many millions of dollars.

Plaintiff distributes its petroleum products sold under the marks "Shell," "Rotella" and "Shell Rotella T" through authorized independent distributors and jobbers, who are required to comply with written quality control standards pertaining to the handling, storage and sale of its bulk petroleum products. These distributors and jobbers are bound by contract to adhere to Shell's quality control standards. All use of the marks "Shell," "Rotella" and "Shell Rotella T" by these independent distributors and jobbers inures to the benefit of Shell and any distributors or jobbers who do not comply with the quality control standards established by the Plaintiff are not permitted to use the trademarks to resell the bulk lubricant.

The evidence discloses that the quality control standards for the transportation and storage of the bulk oil sold by Shell are necessary to maintain the quality of these products sold under these trademarks. This is so because these products are easily contaminated and when contaminated they do not perform in the manner that the customers who purchase them have come to expect from one of the leading suppliers of lubricants in the industry. Thus the evidence shows that the quality control standards are an integral part of the bulk product identified as Shell, Rotella, and Shell Rotella T.

Authorized distributors and jobbers of Shell may not sub-license the right to use these trademarks in the sale of these products and their failure to abide by the quality control standards established by Shell can result in the loss of their license to market these products.

Plaintiff began using the marks Shell, Rotella and Shell Rotella T in the sale of lubricants in North Carolina at least as early as 1957, and has continually used these marks in this state to the present time. Shell and its authorized distributors and jobbers have spent millions of dollars in advertising, promoting and marketing products offered under these marks. As a result of the extensive use, promotion and advertising the marks have become well known to the purchasing public and the petroleum products industry and thus have become strong marks.

Sometime after Shell began using the marks in question in the sale of petroleum products, the Defendant Commercial began using the trademarks Shell Rotella, Shell Rotella T and SRT in interstate commerce in the Mooresville, North Carolina area in connection with the sale of petroleum products without Plaintiff's authorization or control. Commercial is not, and has never been, an authorized distributor or jobber of Shell, but its president freely admits that the company regularly sells at wholesale Shell products including lubricants in both packaged and bulk quantities. In at least some instances the parties market their products in the same manner and in the same advertising media.

The evidence shows without question that Commercial had knowledge of Shell's ownership and prior use of the marks Shell, Rotella, and Shell Rotella T. Sometime in 1986 Shell contacted Commercial and insisted that the use of the marks cease and the Defendant agreed to cease and desist in such use. The evidence shows that Commercial then removed the words Shell, Rotella, and Shell Rotella T from its invoices and bills but replaced them with the abbreviations SRT and RT which the Defendant admits are used to identify the sale of Shell's heavy duty lubricant oil designated by the mark Shell Rotella T.

In the final analysis there is very few essential facts in dispute in this matter. The parties spent a considerable part of the time at trial on the issue of quality control in connection with the distribution and marketing of the bulk oil. The Plaintiff contends that in order to insure the integrity of its product sold in bulk and to maintain the quality which has made its sale a commercial success it must control the handling, storage and sale of the bulk petroleum product. It contends this can only be accomplished by entering into written contracts with authorized distributors and jobbers who are required to comply with the written quality control standards pertaining to the handling, storage and sale of such bulk product. Shell claims that these

controls are necessary to prevent contamination, and that contamination beyond its control would result in the product not being the genuine product of the Plaintiff. The evidence shows that bulk oil is transported and stored in many different types of equipment and that such equipment is used to store and transport many different grades and types of oil products. Many different pumps are used to load and unload the various types of bulk oil products. In order to avoid contamination of these products strict procedures must be followed to not only keep out dirt, water and other contaminates but to avoid mixing oils of different grades, or fuels which are not compatible. Shell contends that it has no way of protecting its bulk oil product other than to have the right by contract with independent distributors and jobbers to control and inspect the handling, storage and transportation of its bulk oil products.

Commercial does not dispute the importance of the care needed in the transportation and storage of the bulk oil products to prevent contamination but contends that it has a system which guarantees these functions. It contends that this oil product along with packaged Shell products are purchased from an authorized Shell distributor and that Shell has no right to determine how it will store or transport these products. The Defendant offered evidence which tended to show that there have been no complaints about contaminations from any of its customers and that it has ceased using the trademarks of Shell but instead uses only the abbreviations SRT and RT on its invoices and now stamps on all invoices a disclaimer to the effect that while it is selling Shell Oil products it is not an authorized distributor or jobber for such products. Commercial contends that since it purchases these products from an authorized Shell distributor it has a right to sell them as genuine Shell Oil Company products and to use the trademarks placed upon the goods by the company and that there is no infringement of the Plaintiff's trademarks because the goods are indeed genuine Shell products.

The Court finds and concludes that it has jurisdiction over the claims set forth in the complaint under Title 15 U.S.C.A. Section 1121, 28 U.S.C.A. Sections 1331, and 1338 and under the doctrine of pendent jurisdiction. The Court further finds that venue is proper in the Western District of North Carolina, and that the Plaintiff as owner of U.S. Trademark Registration No. 286,178 for the mark "Shell" and U.S. Trademark Registration No. 645,323 for the mark "Rotella" has the right under 15 U.S.C.A. Section 1114 to bring a civil action for infringement of its trademarks and for unfair competition.

The Court finds and concludes that the Defendant, Commercial Petroleum, Inc., by using the Plaintiff's trademarks, Shell, Rotella, and Shell Rotella T, and marks similar to said marks such as RT and SRT, in the sale of bulk oil products without the authorization of the Plaintiff, has infringed the trademarks of the Plaintiff in violation of 15 U.S.C.A. Section 1114(1) and the common law of North Carolina.

The Court further finds and concludes that the Defendant, Commercial Petroleum, Inc. by using the Plaintiff's trademarks Shell, Rotella, and Shell Rotella T and marks confusingly similar to said marks, such as RT and SRT, in the sale of bulk oil products without the authorization of the Plaintiff, has competed unfairly with the Plaintiff in violation of 15 U.S.C.A. Section 1125(a), North Carolina General Statutes 75–1.1 and the common law of the State of North Carolina.

The ownership and validity of the trademarks involved in this litigation are not in dispute. Section 32 of the Lanham Trademark Act of 1946, 15 U.S.C.A. Section 1114(1)(a) (1982), prohibits the unauthorized sale of goods bearing a registered trademark where there is a likelihood of confusion, mistake or deception of purchases. The essential element of an action under this section is the showing of the likelihood of consumer confusion as to source of origin. Commercial contends that there can be no infringement or likelihood of confusion because the oil sold is indeed Shell's product, and it was purchased from an authorized distributor.

Commercial cites and relies upon the cases of *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924) and *H.L. Hayden Co. v. Siemens Medical Systems*, 879 F.2d 1005 (2nd Cir.1989), for its support of the contention that the unauthorized sale of genuine trademarked products does not constitute trademark infringement. These cases are factually distinct from the present case and do not support the Defendant's claim. The *Coty* case was decided under the Trademark Act prior to the enactment of the Lanham Act which amended the original Act to keep pace with commercial developments. The *Siemens* case involved a packaged or completed machine containing the trademark and the manufacturer's contention was that of installation and servicing the machine. There was no question in *Siemens* that the product sold by the defendant was the genuine product and that no changes were made but the manufacturer complained that the defendant did not and could not provide proper installation and maintenance of the machine. The Court held this was not an infringement.

In *El Greco Leather Products Co. v. Shoe World*, 806 F.2d 392, 395 (2nd Cir. 1986), the Court held that "[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." The Court further stated that "[f]or this purpose the actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain. *Professional Golfers Association of America v. Bankers Life & Casualty Co.*, 514 F.2d 665, 670–71 (5th Cir. 1975)." The right to control the quality of the goods sold under the holder's trademark becomes more important each day as the field of products liability increases.

Commercial sells packaged products produced by Shell upon which these marks are affixed and may continue to do so without being an authorized dealer. Shell has manufactured and inspected these products and sealed them in containers and this provides Shell with control of the quality of the product until it reaches the consumer. But Shell has no way of controlling the quality of the bulk oil involved here except to do so under authorized distributors and jobbers. This is the practice in the trade and the Defendant is familiar with such practice. Commercial sells many brands of oil in bulk and at least one witness for the Defendant testified that his company had a contract with Commercial to sell its oil under the same arrangements as used by Shell, and that his company would not permit Commercial to sell its products without such contract.

In the *El Greco* case the Court held that where shoes made by a Brazilian company under contract with *El Greco* which included the use of El Greco's trademark a sale to Shoe World without El Greco's inspection constituted an infringement. The Court stated that while the shoes had been manufactured by agreement with the trademark owner, they were not "genuine" for purposes of trademark infringement because the shoes were sold without being inspected by the owner of the trademark to insure quality. The unauthorized disposition of the shoes without inspection deprived the owner of the mark the right to control the quality of the product and could mislead consumers into believing that the trademark owner had approved the shoes for sale.

While the evidence is not sufficient to show actual confusion it is more than ample to show likelihood of confusion. Commercial wants to sell this particular oil in bulk because of the demand and the more favorable price in the purchase in bulk form. The Defendant's evidence shows that the oil is among the best and Commercial's customers demand it. One defense witness, a customer of Commercial, testified that it was a good product and he preferred it and bought it in bulk from Commercial. He stated that notwithstanding the president of Commercial had told him that his company was not an authorized distributor of Shell and he had read the disclaimer placed on the bill of sale of late he would look to Shell if any of his motors were damaged by use of the oil.

Shell has spent sizeable sums of money in developing this lubricating oil and the trademarks to the extent that it is recognized as one of the best oils on the market and is in great demand by the public. To hold that it cannot protect its product and the marks by requiring proper procedures and equipment in the handling, storage and transportation of the oil in bulk quantities is to restrict the use and protection of trademarks never intended by Congress.

The Court has read and carefully analyzed the new cases cited in the briefs filed by the attorneys after the trial and concludes that they do not change its tentative decision announced at the close of the trial that the Plaintiff's marks had been infringed and that it is entitled to protect the integrity of its product sold in bulk.

The Court therefore finds and concludes that the Defendant has infringed the Plaintiff's marks and that the Plaintiff is entitled to injunctive relief. The evidence does not show any damages suffered by Shell and none will be assessed. It is true that the Defendant admits to selling thousands of gallons of this heavy duty oil but Shell suffered no losses in profits. It may very well be that some of the distributors and jobbers operating under contracts with Shell suffered losses but no losses were sustained by Shell. This is not an unusual case and no attorney fees will be assessed.

A judgment restraining the Defendant from selling Rotella and Shell Rotella T oil in bulk quantities without authorization from Shell will be entered simultaneously herewith.