ROSS COSMETICS DISTRIBUTION CENTERS, INC., PLAINTIFF *v.*
UNITED STATES, DEFENDANT

Court No. 91–12–00866

(Decided October 13, 1994)

*Neville, Peterson & Williams (John M. Peterson, Peter J. Allen)* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Mark S. Sochaczewsky), Susan F. Wilson, Sheryl A. French,* Attorneys, United States Customs Service, of counsel, for defendant.

## MEMORANDUM OPINION

DICARLO, *Chief Judge:* Before the court is the remand determination of the United States Customs Service, Ruling Letter 456935 (Nov. 10, 1993), issued pursuant to the court's decision in *Ross Cosmetics Distribution Centers, Inc. v. United States,* 17 CIT 814, Slip Op. 93–151 (Aug. 10, 1993), *modified,* 17 CIT 966, Slip Op. 93–173 (Sept. 1, 1993). Customs' remand determination ruled that certain labels and packages of cosmetic products proposed by plaintiff for importation constitute counterfeit use of United States trademarks and, if imported, would be subject to seizure and forfeiture. Plaintiff renews its Rule 56.1 motion for judgment upon the agency record, challenging Customs decision as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. The court's jurisdiction in this case is provided by 28 U.S.C. § 1581(h) (1988).

## BACKGROUND

Plaintiff, an importer of cosmetics, toiletries, and related products, requested Customs to issue a pre-importation ruling pursuant to 19 C.F.R. § 177.2 (1993), regarding whether its packaging for certain bath oils and fragrance oils proposed for importation conformed with Customs-administered laws and regulations relating to trademarks, trade names, and similar intellectual property rights. Specifically, plaintiff's packages for its bath oil products GORGEOUS, LOVE BIRDS, WHISPER, OBLIVION, OSCENT, and MORNING DREAM bear lan-

guage inviting customers to compare these products to the well-known products of GIORGIO, L'AIR DU TEMPS, OMBRE ROSE, OPIUM, OSCAR, and YOUTH DEW respectively. Plaintiff's products are sold at a fraction of the price of the well-known products.

Customs issued its initial ruling on June 27, 1991, Rul. Ltr. 451142. The Agency held that, because "GIORGIO," "OPIUM," and "YOUTH DEW" are trademarks registered with the United States Patent and Trademark Office (PTO) and recorded with Customs for protection against infringing importation, plaintiff's use of these marks on its packaging constituted a counterfeit use of these marks. Accordingly, plaintiff's products, if imported, would be subject to seizure and forfeiture for violation of 19 U.S.C. § 1526 (1988). Customs also held in its Ruling that it was unable to issue a binding ruling regarding plaintiff's use of other marks not recorded with Customs. The Ruling stated, however, that if these marks were registered with the PTO, articles bearing such marks would be subject to seizure under 19 U.S.C. § 1595a(c) (1988) for violation of 18 U.S.C. § 2320 (1988). Plaintiff filed this action challenging Customs' initial ruling and seeking a judgment upon the agency record. The court issued a decision on August 10, 1993, holding that the Ruling was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Ross Cosmetics,* 17 CIT 814, Slip Op. 93–151. The court held that before Customs could conclude plaintiff's products were counterfeits, Customs must first make a finding that plaintiff's packages were "identical with or substantially indistinguishable from" the registered marks, and that Customs had failed to do so. *Id.* at 6–7. The court also held that the Ruling was arbitrary, because in finding that plaintiff's packages were likely to cause customer confusion, Customs simply compared plaintiff's packages to the facsimile copies of the recorded marks, rather than to the actual packages of the products, or a reasonable reproduction representing the design and color of the trademarks. *Id.* at 7–11. The court further held that, with respect to the unrecorded marks, Customs should investigate whether these marks are registered with the PTO. *Id.* at 16–17, Slip Op. 93–173 at 1. The court remanded the Ruling to Customs for redetermination.

On November 10, 1993, Customs issued its remand determination. The remand determination ruled: (1) plaintiff's products using the trademarks "OMBRE ROSE," "OPIUM," and "OSCAR" are admissible as non-infringing goods; and (2) plaintiff's products using the trademarks "GIORGIO," "YOUTH DEW," and "L'AIR DU TEMPS" are considered to infringe the rights of the respective trademark owners, and constitute a counterfeit use of these trademarks. Because "GIORGIO" and "YOUTH DEW" are recorded with Customs and "L'AIR DU TEMPS" is not, products using the trademarks "GIORGIO" and "YOUTH DEW," if imported, would be subject to seizure and forfeiture under 19 U.S.C. § 1526(e), and products using the trademark "L'AIR DU TEMPS," if imported, would be subject to seizure and forfeiture

under 19 U.S.C. § 1595a(c) for violation of 18 U.S.C. § 2320. *Remand Determination,* at 28.

Plaintiff now contests Customs' remand determination concerning plaintiff's use of the trademarks "GIORGIO" and "L'AIR DU TEMPS." As for "YOUTH DEW," plaintiff claims that the issue has been rendered moot by a stipulation of settlement, dated June 24, 1993, between plaintiff and the trademark owner of "YOUTH DEW," in *Estee Lauder Inc. v. Apple Cosmetics Inc.,* No. 92 Civ. 7969 (S.D.N.Y. June 24, 1993). The stipulation provides that plaintiff "shall permanently cease and desist, directly or indirectly," from using the YOUTH DEW trademark "in comparative advertising in a manner where such trademark [   ] [is] substantially larger than the surrounding text or significantly set off by color or type so as to dominate the surrounding text[.]" A.R. Doc. 5 at 2. Plaintiff states that under the terms of this stipulation, it has agreed to discontinue sales of its product MORNING DREAM. Pl.'s Br. at 26.

### Standard of Review

The applicable standard of review is whether Customs' determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 28 U.S.C.A. § 2640(e) (West 1994); 5 U.S.C. § 706(2)(A) (1988).

> The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962)).

In reviewing the agency's explanation, the court "must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* (citations omitted).

### Discussion

This court's review will be limited to that part of the remand determination challenged by plaintiff; that is, Customs' decision concerning plaintiff's use of the trademarks "GIORGIO" and "L'AIR DU TEMPS" on the proposed packaging of its products GORGEOUS and LOVE BIRDS, respectively.

1. *The Products:*

a. "GIORGIO" v. "GORGEOUS":

The trademark "GIORGIO" is owned by Giorgio Beverly Hills, Inc., which has three valid trademark registrations with both the PTO and Customs for GIORGIO perfume and toiletry products: (1) the word mark "GIORGIO;" (2) a GIORGIO crest design; and (3) a design of

alternating yellow and white vertical stripes. *See* A.R. Docs. 8–10. The GIORGIO packages use the stripe design as background, and bears the GIORGIO crest and the word mark "GIORGIO" in various styles and sizes. A.R. Docs. 7, 11.

The proposed package of plaintiff's product GORGEOUS invites the consumer to compare GORGEOUS to GIORGIO. The package of GORGEOUS uses diagonal yellow and white stripes as the background. A crest design appears above the name "GORGEOUS." At the top of the front panel is the language "COMPARE TO GIORGIO YOU WILL SWITCH TO * * *," in which the word mark "GIORGIO" is followed by the registered trademark symbol and appears in a bold and larger size print than the rest of the words. At the bottom of the front panel is a disclaimer: "OUR PRODUCTS IS IN NO MANNER ASSOCIATED WITH, OR LICENSED BY, THE MAKERS OF GIORGIO." The word mark "GIORGIO" is again followed by the registered trademark symbol. All words in the disclaimer appear to be in the same size print. A.R. Doc. 2.

### b. "L'AIR DU TEMPS" v. "LOVE BIRDS":

The trademark "L'AIR DU TEMPS" is owned by Nina Ricci, S.A.R.L., and is registered with the PTO, *see* A.R. Doc. 15, but is not recorded with Customs. In addition to the word mark "L'AIR DU TEMPS," Nina Ricci has two valid trademark registrations with the PTO, each with a design mark of a swirled glass bottle with a closure, with one topped by one three-dimensional dove, and the second topped by two three-dimensional doves. A.R. Docs. 16, 17. The sample box of L'AIR DU TEMPS[1] shows a yellow background, a golden oval containing two white doves in flight in a prominent position on the front panel, a golden band across the bottom of the front panel, and the word mark "L'AIR DU TEMPS" in gold print between the oval and the band.

The proposed packaging for plaintiff's product LOVE BIRDS has a primarily yellow background with thin white stripes. The front panel of the box shows an orange oval in a prominent position and an orange band across the bottom. The orange oval contains four birds in flight and the words "LOVE BIRDS," all in gold color. At the top of the front panel is the language "COMPARE TO L'AIR DU TEMPS YOU WILL SWITCH TO * * *," in which the word mark "L'AIR DU TEMPS" is followed by the registered trademark symbol and appears in a bold and larger size print than the rest of the words. At the bottom of the front panel and within the orange band is a disclaimer: "OUR PRODUCTS IS IN NO MANNER ASSOCIATED WITH, OR LICENSED BY, THE MAKERS OF L'AIR DU TEMPS." The word mark "L'AIR DU TEMPS" in the disclaimer is also followed by the registered trademark symbol.

---

[1] The sample box of L'Air Du Temps Eau de Toilette was submitted by Customs after the remand determination was filed with the court. Defendant states that the sample is representative of the product originally observed by Customs during the remand investigation. Letter from Counsel for Defendant (July 22, 1994). In the remand determination, Customs described the product originally observed as being "primarily yellow with a white oval on the front panel that contains two gold-colored doves in flight." *Remand Determination*, at 23.

All words in the disclaimer appear to be in the same size print. A.R. Doc. 2.

2. *Statutory and Regulatory scheme; Customs Policy:*

The applicable statutes in this case are the Trademark Act of 1946 (the Lanham Act), 15 U.S.C. §§ 1051–1127, and sections under title 19 of the United States Code concerning the protection of trademark rights by the Customs Service. In general, goods that infringe the rights of United States trademark owners are not permitted importation; infringing goods are subject to seizure and forfeiture by the Customs Service. *See* 15 U.S.C. §§ 1124, 1125 (1988); 19 U.S.C. §§ 1526(e), 1595a(c).

a. Applicable Statutory Violations:

Section 42 of the Lanham Act, 15 U.S.C. § 1124, forbids importation of any goods that "copy or simulate" a trademark registered with the PTO. "A 'copying or simulating' mark" is either "an actual counterfeit of the recorded mark or name[,] or is one which so resembles it as to be likely to cause the public to associate the copying or simulating mark with the recorded mark or name." 19 C.F.R. § 133.21(a) (1993).

Section 43(b) of the Lanham Act, 15 U.S.C. § 1125(b), forbids importation of any goods "marked or labeled in contravention of" section 43(a). Section 43(a) provides in pertinent part:

> Any person who, on or in connection with any goods * * * or any container for goods, uses in commerce *any word, term, name, symbol, or device, or any combination thereof,* or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (1) *is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association* of such person with another person, *or as to the origin, sponsorship or approval* of his or her goods * * * by another person, or
>> (2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods * * *,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (emphasis added). By virtue of this broad coverage of section 43, Customs' protection of trademark rights extends to all trademarks and trade dresses, regardless of whether they are registered with the PTO or recorded with Customs.

b. Penalties:

Under 19 U.S.C. § 1526(e), any merchandise "bearing a counterfeit mark" imported into the United States in violation of 15 U.S.C. § 1124 "shall be seized and, in the absence of the written consent of the trademark owner, forfeited for violations of the customs laws." A "counterfeit" is defined as "a spurious mark which is identical with, or

substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127 (1988).

Under 19 U.S.C. § 1595a(c), any merchandise imported into the United States "may be seized and forfeited" if the merchandise or its packaging violates section 1124, 1125, or 1127 of title 15 of the United States Code, or section 2320 of title 18 of the United States Code, which imposes criminal liability on any person who intentionally traffics in counterfeit goods. 19 U.S.C. § 1595a(c)(2)(C).

c. Counterfeit v. Confusingly Similar:

In order to facilitate the enforcement of trademark protection at the border, Customs currently divides trademark infringement cases into two categories: those which bear a "counterfeit" mark, and those which bear a "confusingly similar" mark. *Remand Determination,* at 3–4. A "counterfeit" mark is defined in accordance with 15 U.S.C. § 1127. A "confusingly similar" mark is defined by Customs as one "that is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the origin, affiliation, or sponsorship of the goods in question." *Remand Determination,* at 4. This definition appears to track the language contained in section 43 (a) of the Lanham Act. In addition, Customs draws a distinction between trademarks that are registered and recorded with Customs, and trademarks that are registered but not recorded with Customs. *Id.*

Thus, imported articles bearing "counterfeit" versions of marks recorded with Customs are subject to seizure and forfeiture under 19 U.S.C. § 1526(e). Imported articles bearing "counterfeit" versions of marks not recorded with Customs are subject to seizure and forfeiture under 19 U.S.C. § 1595a(c) for violation of 18 U.S.C. § 2320. *Remand Determination,* at 4.

Imported articles bearing "confusingly similar" versions of marks recorded with Customs are ultimately subject to seizure and forfeiture under 19 U.S.C. § 1595a(c) for violation of 15 U.S.C. § 1124. Imported articles bearing "confusingly similar" versions of marks not recorded with Customs are currently not prohibited for importation. *Id.*

3. *Counterfeit v. Mere Infringement:*

Under Customs' laws and regulations, goods that infringe upon rights of trademark owners are classified into two categories. The first category consists of counterfeit merchandise which bears "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Usually, "counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise." 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25.01[5][a] (3d ed. 1992).

The second category consists of "merely infringing" goods which are not counterfeits but bear marks likely to cause public confusion. This category includes merchandise which bears a mark that "copies or simu-

lates" a registered mark so as to be likely to cause the public to associate the copying or simulating mark with the registered mark. *See* 15 U.S.C. § 1124; 19 C.F.R. § 133.21; *see also Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 527–28 (2d Cir. 1983) *cert. denied* 465 U.S. 1100 (1984) (distinguishing copying or simulating mark that is counterfeit mark from copying or simulating mark that is a merely infringing mark). Also included in this category is merchandise which uses any word, name, symbol, or any combination thereof, in such a manner that is likely to cause public confusion as to the origin, sponsorship, or approval of the merchandise by another person. *See* 15 U.S.C. § 1125(a)(2).

The significance of the distinction between counterfeits and merely infringing goods lies in the consequences attached to the two categories. Counterfeits must be seized, and in the absence of the written consent of the trademark owner, forfeited. *See* 19 U.S.C. § 1526(e); 19 C.F.R. § 133.23a(b) (1993). Merely infringing goods, on the other hand, may be seized and forfeited for violating 15 U.S.C. §§ 1124 or 1125. 19 U.S.C. § 1595a(c)(2)(C). Under Customs regulations, merely infringing goods may be imported if the "objectionable mark is removed or obliterated prior to importation in such a manner as to be illegible and incapable of being reconstituted." 19 C.F.R. § 133.21(a), (c)(4).

### 4. *Whether Plaintiff's Use of Registered Trademarks Constitutes Counterfeit Use:*

Customs determined that plaintiff's use of the word marks "GIORGIO" and "L'AIR DU TEMPS" on the packaging of its own products constituted a counterfeit use of these marks, because plaintiff applied marks "identical to the registered trademarks" to its goods without the authorization of the trademark owners. *Remand Determination*, at 28. The court disagrees.

It is clear that plaintiff's products are not counterfeits. Plaintiff's products GORGEOUS and LOVE BIRDS do not imitate the well-known products GIORGIO and L'AIR DU TEMPS in all details of construction and appearance. Rather, plaintiff uses the marks "GIORGIO" and "L'AIR DU TEMPS" to market its products GORGEOUS and LOVE BIRDS.

The use of another person's trademark in the context of marketing one's own product is not prohibited by law unless it creates a reasonable likelihood of confusion as to the source, identity, or sponsorship of the product. *See Saxlehner v. Wagner*, 216 U.S. 375, 380–81 (1910) (permitting seller of mineral water to use competitor's trademark denoting geographical source to truthfully state he was selling water identical in content to that of trademarked water); *G.D. Searle & Co. v. Hudson Pharm. Corp.*, 715 F.2d 837, 842 (3d Cir. 1983) (holding manufacturer of laxative may refer to its competitor's trademark on its own product packaging to characterize its own product as "equivalent" to competitor's product); *Saxony Prods., Inc. v. Guerlain, Inc.*, 513 F.2d 716, 722 (9th Cir. 1975) (holding Saxony may use Guerlain's trademark SHALI-

MAR to apprise consumers that its fragrance product is "like" or "similar" to SHALIMAR, provided such representation is truthful and that consumer confusion is not likely to result); *Smith v. Chanel, Inc.,* 402 F.2d 562, 563 (9th Cir. 1968) (holding that perfume manufacturer who copied unpatented product sold under trademark may use trademark in his advertising to identify copied product). Customs' practice shows its acceptance of this principle. *See e.g.,* C.S.D. 89–172, 3 Cust. B. & Dec. 547, 549 (1988) (holding that reference to trademarks NINTENDO and NINTENDO ENTERTAINMENT SYSTEM on packages for video game joystick to indicate its compatibility with NINTENDO system is permissible); C.S.D. 79–318, 13 Cust. B. & Dec. 1476, 1477 (1978) (holding that packaging of doll clothes referring to trademarked doll name would not infringe upon rights of trademark owner of doll name).

Thus, at issue is not whether plaintiff may use the marks "GIORGIO" and "L'AIR DU TEMPS" on the packaging of its own products, but whether such use is likely to cause consumer confusion. If a likelihood of confusion exists, plaintiff's use of the marks would constitute trademark infringement, but not a counterfeit use of the marks.

In reaching the conclusion that plaintiff's use of the marks constitutes a counterfeit use, Customs misapplied 15 U.S.C. § 1127, which defines a counterfeit as a spurious mark "identical with, or substantially indistinguishable from, a registered mark." According to Customs, any reference to another person's mark in the context of marketing one's own goods (whether a parallel use or comparative advertising) would constitute counterfeit use if a likelihood of confusion is found. This is because, under Customs' reasoning, the mark used in such a context would be necessarily "identical" to the registered mark. Customs' application of the statutory definition of counterfeit ignores the distinction between counterfeit and mere infringement, and therefore is not in accordance with law.

5. *Whether Plaintiff's Use of Registered Trademarks Constitutes Infringement:*

Having held that plaintiff's use of the marks "GIORGIO" and "L'AIR DU TEMPS" does not constitute a counterfeit use, the court must now address whether such use nevertheless infringes the rights of the trademark owners.

The basic test for statutory trademark infringement is "likelihood of confusion," which has been construed by courts to mean a probability of confusion rather than a possibility of confusion. *See* 2 McCarthy on Trademarks and Unfair Competition § 23.01[3][a]. In order to determine whether a likelihood of confusion exists, courts apply and balance multiple factors. *Id.* § 23.03[1]. The commonly used factors include: the degree of resemblance between the conflicting marks; the similarity of the marketing methods and channels of distribution; where the goods are not directly competitive, the likelihood that the senior user will expand into the field of the junior user; the degree of distinctiveness of

the mark; the characteristics of the prospective purchasers and the degree of care they exercise; the intent of the alleged infringer; and evidence of actual confusion. *Id.*

Although courts may also consider an alleged infringer's use of a disclaimer stating that it is not connected with the trademark owner, the mere presence of a disclaimer does not necessarily prevent consumer confusion. *Id.* § 23.15[9]. In fact, under certain circumstances, use of a disclaimer may even aggravate brand confusion. *See E. & J. Gallo Winery v. Gallo Cattle Co.,* 1989 U.S. Dist. LEXIS 7950, 12 U.S.P.Q.2d (BNA) 1657 (E.D. Cal. 1989), *modified,* 955 F.2d 1327 *and amended* 967 F.2d 1280 (9th Cir. 1992). Generally, the relative location and size of the disclaimer within the overall context of the advertisement is an important consideration in evaluating the effectiveness of a disclaimer. For instance, in *Charles of the Ritz Group v. Quality King Distributors,* 832 F.2d 1317 (2d Cir. 1987), where the packaging of the fragrance "Omni" used the trademark "Opium" in its comparative advertising slogan, while simultaneously mimicking Opium's trade dress and scent, the court held that the disclaimer, which was in a smaller type size and located in a less prominent position than the words "Omni" and "Opium," was inadequate to obviate consumer confusion. *See also Soltex Polymer Corp. v. Fortex Indus., Inc.,* 832 F.2d 1325, 1330 (2d Cir. 1987) (noting that use of disclaimer may be sufficient where likelihood of confusion is "minimal or moderate"); *University of Georgia Athletic Ass'n v. Laite,* 756 F.2d 1535, 1547 (11th Cir. 1985) (holding relatively inconspicuous disclaimer ineffective); *Weight Watchers Int'l, Inc. v. Stouffer Corp.,* 744 F. Supp. 1259, 1277 (S.D.N.Y. 1990) (holding disclaimer ineffective in part because of relative location and size).

In this case, Customs applied commonly accepted factors,[2] and determined that the use of the marks "GIORGIO" and "L'AIR DU TEMPS" on the packaging of GORGEOUS and LOVE BIRDS is likely to cause confusion, and that the disclaimers on the packaging are insufficient to dispel the likelihood of confusion. *Remand Determination,* at 28. Plaintiff agrees that the factors Customs used to determine the likelihood of confusion are appropriate. Plaintiff asserts, however, that Customs incorrectly applied these factors to the two packages, and that Customs was arbitrary in finding the disclaimers ineffective.

Upon examining the record, which contains photocopies and samples of GIORGIO and L'AIR DU TEMPS products as well as plaintiff's proposed packaging, the court sustains Customs' finding of likelihood of confusion.

a. "GIORGIO" v. "GORGEOUS":

Applying the list of factors relevant to the determination of likelihood of confusion, Customs found the following:

---

[2] Customs applied the list of factors first enumerated in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492 (2d Cir.) *cert. denied,* 368 U.S. 820 (1961).

(a) The word mark "GIORGIO," as used on fragrance and toiletry products, is inherently distinctive, and is therefore a strong mark entitled to a broad scope of protection. *Remand Determination,* at 12.

(b) "GORGEOUS" and "GIORGIO" are used on identical product—perfumes and toiletries are listed in the same class (International Class—3) for the purposes of the Trademark Office. This factor enhances the likelihood of confusion. *Id.*

(c) There is a high degree of similarity between the two packages. GIORGIO is covered by a pattern of alternating vertical white and yellow stripes; GORGEOUS by a pattern of alternating diagonal white and yellow stripes, of the same width as the GIORGIO stripes. GIORGIO has the red, black, and gold GIORGIO crest; GORGEOUS a red and gold crest. On the GIORGIO packaging, the word "GIORGIO" appears slightly above the center of the front panel and in close proximity to the GIORGIO crest; on the GORGEOUS packaging, the word "GORGEOUS" also appears slightly above the center of the front panel and in close proximity to its crest. In addition, the words "GORGEOUS" and "GIORGIO" share consonants, vowels, and sounds in their pronunciation. *Id.* at 15–16.

(d) The fact that plaintiff selected and combined the three design elements utilized on GIORGIO boxes for use on its packaging (the word mark "GIORGIO," the image of a crest, and the yellow and white stripes), and the fact that the word mark "GIORGIO" appears in a prominent location on the front panel and in a darker and bigger print than the surrounding language inviting comparison, strongly suggest that plaintiff intentionally designed its packaging to be similar to GIORGIO, and thus did not develop its design in good faith. *Id.* at 14–15.

(e) Since the quality of GORGEOUS is not comparable to that of GIORGIO, GORGEOUS would be sold in discount and low-end retail stores, whereas GIORGIO is normally sold in boutiques and fine department stores. However, there is a possibility GIORGIO would be sold in the same store as GORGEOUS. Customs' survey revealed that both GIORGIO and plaintiff's products were sold by a Wal-Mart store, and that a major retail drug store chain sold both GIORGIO products and various brands of "smell-alike" products. The possibility that the two products could be sold in the same stores enhances the likelihood of confusion. *Id.* at 12–13.

(f) While a typical buyer of GIORGIO products may be expected to exercise care before purchasing because of the higher prices involved, a typical buyer of GORGEOUS would be less likely to make more than a cursory inspection of the product because low-priced items are often the subject of impulse purchasing. The nature of plaintiff's product as a target of impulse purchasing enhances the likelihood of confusion. *Id.* at 13.

On balance, Customs found the factors that enhance the likelihood of confusion outweigh the factors that diminish the likelihood of confu-

sion. Therefore, "there is a substantial likelihood that consumers could be confused as to the source of the Ross product." *Id.* at 16.

Customs then examined whether the disclaimer used is sufficient to eliminate the confusion. Customs found that the disclaimer on the package of GORGEOUS is located at the bottom of the front panel, far from the word mark "GIORGIO" which appears in a prominent position at the top of the panel, and that the disclaimer is written in a smaller type size than any other words on the box. Customs concluded that the disclaimer could be easily overlooked by consumers and therefore is insufficient to dispel the likelihood of confusion. *Id.* at 18.

The court holds that Customs properly applied the relevant factors in determining a likelihood of confusion, and that Customs' examination of the adequacy of the disclaimer was consistent with the applicable law. Although the court may not necessarily come to the same conclusion if reviewing the case de novo,[3] it finds there is a rational connection between the facts found and the determination made by Customs.

The court sustains Customs' finding of a likelihood of confusion with respect to plaintiff's packaging for GORGEOUS. Accordingly, packages identical to that of GORGEOUS shall be denied entry and, if imported, are subject to seizure and forfeiture under 19 U.S.C. § 1595a(c).

b. "L'AIR DU TEMPS" v. "LOVE BIRDS":

Customs applied the same list of factors in determining the likelihood of confusion with respect to plaintiff's proposed packaging for LOVE BIRDS. Customs found:

(a) The word mark "L'AIR DU TEMPS" as used on fragrances is inherently distinctive, and therefore is a strong mark entitled to broad protection. *Remand Determination,* at 22.

(b) "LOVE BIRDS" and "L'AIR DU TEMPS" are used on identical products—perfumes, cosmetics/toiletries. This factor enhances the likelihood of confusion. *Id.*

(c) There are several similarities between the two packages: the yellow background; the oval on the front panel; and birds in flight within the oval. *Id.* at 23.

(d) On plaintiff's package, the words "LOVE BIRDS" appear faintly, whereas the mark "L'AIR DU TEMPS" appears in black ink against a yellow background in a prominent location at the top of the front panel. Further, the word mark "L'AIR DU TEMPS" is in a bigger and bolder type than the rest of the language inviting comparison; the disclaimer is printed in the smallest lettering and placed at the bottom of the front panel. These factors together strongly suggest that plaintiff attempted to create the packaging to remind consumers of the trademark owner's product. *Id.* at 23–24.

---

[3] Because plaintiff filed a Rule 56.1 motion seeking judicial review upon the agency record, the issue of whether the court has de novo review in this action was not raised. Depending upon the particular circumstances of the case, the court may have de novo review in an action brought under 19 U.S.C. § 1581(h). *See* 28 U.S.C.A. § 2640(e), 5 U.S.C. § 706(a)(F).

(e) In its survey of local stores, Customs did not find any that sold both L'AIR DU TEMPS and plaintiff's products. This factor diminishes the likelihood of confusion. *Id.* at 22.

(f) The nature of plaintiff's products as a target of impulse purchasing enhances the likelihood of confusion. *Id.*

On balance, Customs found the factors that enhance the likelihood of confusion outweigh the factors that diminish the likelihood of confusion. Based on the similarities in the overall appearance of the two packages, Customs found that the disclaimer used is not sufficient to eliminate the likelihood of confusion. *Id.* at 23–24.

The court finds that Customs properly applied the relevant factors and examined the effect of the disclaimer in determining a likelihood of confusion. Customs' finding of a likelihood of confusion shows a rational connection with the facts found. In accordance with the applicable standard of review, the court must sustain Customs' determination.

The court holds that plaintiff's packaging for LOVE BIRDS infringes upon the rights of the trademark owner of "L'AIR DU TEMPS" under 15 U.S.C. § 1125(a). Importation of packages identical to that of LOVE BIRDS may therefore be subject to seizure and forfeiture in accordance with 19 U.S.C. § 1595a(c).

## CONCLUSION

For the reasons stated above, the court holds that Customs' determination that plaintiff's proposed packages of GORGEOUS and LOVE BIRDS infringe the rights of the trademark owners of "GIORGIO" and "L'AIR DU TEMPS" is not arbitrary, capricious, or an abuse of discretion, and is otherwise in accordance with law.

Further, the court holds Customs' conclusion that plaintiff's use of the trademarks "GIORGIO" and "L'AIR DU TEMPS" is a counterfeit use is not in accordance with law.